CASE 48—EQUITY—FEBRUARY 15, 1881.

# Bayless, &c., v. Prescott, &c.

APPEAL FROM BOURBON CIRCUIT COURT.

The word survivor, in the absence of any explanation by the devisor in any part of the will, must be interpreted according to its literal meaning, and points to those who outlive the first devisee.

BRENT & McMILLAN AND HUSTON & MULLIGAN FOR APPELLANT.

The devisor meant by the word survivors those who had not in the meantime died without issue, or who, having died, had left issue, as well as those who, with or without issue, actually survived. (Birney v. Richardson, 5 Dana, 429; 8 Vesey, 10; 14 Ib., 578; Roper Leg., vol. 1, 426; Haskins v. Sale, 25 Penn.)

Bayless, &c., v. Prescott, &c.

M. C. JOHNSON FOR APPELLEE.

In the limitation as to Phœbe, daughter of the devisor, there is nothing to confine the operation of the fact of her death without children to any period whatever. Only those who actually outlived her take the estate after her death. (Birney v. Richardson, 5 Dana, 424; Jarman on Wills, 2d vol., 608; Ib., 610; Best v. Conn, 10 Bush, 38.)

JUDGE HARGIS DELIVERED THE OPINION OF THE COURT.

Nathan Bayless, sr., by the third clause of his will, devised to his daughter, Phœbe Hutsell, two hundred acres of land, with this limitation:

"Should she die leaving no child or children of her body, it is my will, and I do ordain it, that the said two hundred acres of land shall go to, and be inherited by, such of my devisees as shall survive the said Phœbe."

Phœbe Hutsell, Mary Prescott, Nancy Bowles, Nathan Bayless, jr., and Hannah Bayless were his devisees. The last was his widow, and the rest were his only children.

Phœbe died childless in 1876.

All the devisees, except Mary Prescott who claims the two hundred acres of land under the limitation quoted, had died during Phœbe's life-time.

The widow had not again married. The devisee Nancy Bowles left a number of children, who are made appellees.

And the devisee Nathan Bayless, jr., left the appellant, his only child, who controverts the claim of appellee Mary Prescott, and asserts that the children of the deceased devisees took an equal share per stirpes in the land with her.

The only question, therefore, is the construction of the limitation upon the devise to Phœbe.

It created in her a fee subject to be defeated by her death without child or children.

The contingency upon which depended the quantity of her estate in the two hundred acres having occurred, and the

testator having made a disposition of it to take effect upon the happening of that contingency, the persons to whom he devised it must be ascertained from his language according to its plain and ordinarily accepted sense, as there are no other provisions of the will which shed much, if any, light upon the testator's intentions with respect to the limitation placed on Phœbe's devise.

The plain import of his language is, that the land shall go to any of the persons named as his devisees who should live longer than Phœbe, and to no other person, whether related to the devisees or not.

The appellee Mary Prescott was a co-devisee with Phœbe, and the only one who survived her, and therefore literally and exclusively within the language of the limitation.

There is nothing expressly or impliedly said about the land going to the children or descendants of such of the devisees who should die leaving any, nor is the word survive used with reference to them.

The word survive, which is employed by the testator, was used by him to designate the individual devisees who should outlive the others.

To hold that the words, "such of my devisees as shall survive the said Phœbe," are equivalent to the testator saying that he gave the land to his other devisees or their survivors, would not be construing but altering the language of the will, which is unambiguous, and so plain that there is hardly room for construction.

But there is a sensible and legal disposition of this identical question in an opinion by Judge Peters, in the case of Best v. Conn, 10 Bush, page 38.

The language of the limitation contained in that case was :

"If either of the aforesaid legatees die without issue, then the portion which he or they were entitled to *is to go to the survivors equally*."

By an evident oversight, it was stated in the opinion that the persons named in the will who first took the property under it were invested with "a life estate," instead of a defeasible fee, and the conclusion reached demonstrates the inadvertence.

It was held that the devisees who survived one of their number, dying without issue, on his death took the portion set apart to him, in exclusion of the children of a devisee who died in the life-time of the latter.

That decision is assailed by counsel for the appellant, who assert that it unsettles a rule of construction which has obtained for forty years in Kentucky, but admit that it is conclusive of this case unless it be overruled.

And we are asked to do so on the authority of Birney v. Richardson, &c., 5 Dana, 424, and the British cases therein cited. Counsel have been unable to cite any other Kentucky case, yet insist that Birney v. Richardson is authority, although the court on the point at issue here, in that case used this language: "But we have not deemed it necessary to speak more definitely on this point, *or to give a judicial opinion respecting it*, because, in our judgment, the testator intended only a dying without issue in the event of his wife's marriage and prior thereto."

The case turned upon the *time* of distribution, after which it was held there could be no division of a child's portion who may have died childless subsequent to the widow's marriage, upon which the period of distribution depended.

In the case of Davidson v. Dallas, 14 Vesey, jr., page 577, the testator had by his will bequeathed to the children of his brother Robert £3,000, to be equally divided among them, with this limitation annexed: "And if either of them should die before the age of twenty-one years, their share to go to the survivors."

After the testator's death two children were born to his brother Robert, and it was held that these after-born children were not included by a proper construction of the word "survivors," and that those children only who were living at the death of the testator were entitled. A different view having been adopted, it was declared by Lord Eldon to be a forced construction of the term "survivors."

That case does sustain the opinion in Birney v. Richardson, &c., on the adjudged question.

While there is learning displayed in the dicta of the latter opinion in agreeing with Lord Eldon's view, who construed the word "survivors" as synonymous with "others," in Wilmot v. Wilmot, 8 Vesey, jr., page 12, yet it is there expressly decided that the rule was based alone upon a presumption which opposed the literality of the will, whose context, it was held by various authorities in note 3 to Milsom v. Awdry, 5 V., 465, and Perry v. Woods 3 V., 204, may exclude that construction, which seems to have been adopted more to supply wills with words on account of supposed defects of expression than to construe the language they actually contain. The probable intention of the testator cannot, in our opinion, be reached by departing from the language of the will, which must be construed and not changed. . In the absence of all explanation by the rest of the instrument, the word survive, as used in Bayless' will,

Bayless, &c., v. Prescott, &c.

must be interpreted according to its literal and plain mean-ing, this being the rule established by a number of cases.

In the case of Ferguson v. Dunbar, 3 B. C. C., 468, Lord Thurlow said, "he thought the testator meant the children should take the share which would have accrued to the parent if living; but not having said so, but limited such share to the survivors or survivor, he must declare G as the only surviving child entitled to the whole of E's share."

The will construed in the case of Crowder v. Stone, 3 Russell's Chancery Reports, 217, contained a clause similar to the limitation in the will before us, and in construing it, Lord Lyndhurst held that the survivor was entitled to the whole. And in speaking of the construction which appellees' counsel contend for, he said the court may sometimes be compelled to adopt it in order to accomplish the intention which *appears on the whole of the will.*

In the case of Ranelagh v. Ranelagh, 2 Mylne & Keen, 441, the language of the limitation was this: "In case of the demise of any of the above parties (meaning the first devisees) without legitimate issue, their, his, or her proportions to be divided among the *survivors.*"

And Lord Brougham said, in substance, that the word "survivors" was used in its plain and obvious sense, as meaning such of the individuals named as should be living when any of them happened to die.

Such was the construction in Cromek v. Lumb, 3 Younge & Collyer's Eq. Exch., page 566.

In view of these authorities, and the very strong language of Jarman on Wills, on page 435, where, in referring to them and the construction adopted in Wilmot v. Wilmot, *supra,* he said, "we are now taught, by a series of decisions.

which outweigh any opposing dicta or opinions, that the word 'survivor,' like every other term when unexplained by other parts of the will, is to be interpreted according to its strict and literal meaning," we are convinced that the rule laid down in Best v. Conn is sustained by reason and authority.

And the judgment is therefore affirmed.