CASE 25—PETITION EQUITY—OCTOBER 15.

# Gorham &c., v. Betts, &c.

APPEAL FROM SCOTT CIRCUIT COURT.

1. CONSTRUCTION OF DEVISE—SURVIVORSHIP.—Where there is a devise to several persons, with the provision that if one of them dies, his share shall survive to the others, a share which has once vested by survivorship will not, upon the death of the devisee in whom it has thus vested, so vest again in the survivors, unless it clearly appears from the will that it was the testator's intention that it should so vest.

2. SAME.—Where there is a devise to several persons with a devise over to the "survivors" in the event of the death of one of the devisees, the word "survivors" will be given its natural and literal meaning, unless it appears from other provisions of the will that the testator used it as synonymous with "others."

3. SAME.—A devise by testator to several daughters, with the provision that "in case either of my daughters above named should die, leaving no child living at her death, then her portion shall be equally divided between her sisters only, my sons taking no part thereof," created a defeasible fee, but the defeasible character of the fee ceased when but one sister remained, and her estate became absolute.

BRECKINRIDGE & SHELBY FOR APPELLANTS.

When there is nothing in the context to indicate a contrary intention, the word "survivors" must be construed strictly. (Wilmot v. Wil-

Gorham, &c., v. Betts, &c.

mot, 8 Vesey, Jr., 10; Birney v. Richardson, 5 Dana, 429; Harris v. Berry, 7 Bush, 113; 2 Redfield on Wills, chap. 14, sec. 70, p. 756; 2 Jarman on Wills, 619; Smith v. Osborne, 6 House of Lords Cases, 375; 4 Kent, 261; 1 Jarman on Wills, p. 40.)

JAMES E. CANTRILL AND J. F. ASKEW FOR APPELLEES.

Cite: Bayless, &c., v. Prescott, &c., 79 Ky., 252; Conn v. Best, 10 Bush, 36; Redfield on Wills, vol. 2, 266-285; Jarman on Wills, vol. 2, chap. 42, p. 536; Jarman on Wills, chap. 47, 711; 8 B. M., 616.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

James Betts died testate in 1856. His will provides *inter alia* as follows:

"Fourth. I direct that, after the death of my wife, the remainder of my estate, all debts being first paid, shall be divided among my children, James, Sampson, Sarah, Mary and Charlotte, so as to make them equal, taking into account what each one may have received of me by way of advancements or charged in my estate book, which advancements are to be deducted from the shares of my children respectively; but it is my desire that my three daughters shall have a home where I now reside, and I therefore direct that, in the division of my land, the shares of my said daughters shall be laid off together, so as to include the dwelling-house, garden, spring lot, and the ground near the dwelling-house, in such form as will be convenient for them as it can be made without injury to the other shares. *  *  *  *

"Fifth. It is my will that my children shall have the full title in fee-simple to the property I devise them, with the following restrictions: First, during the lifetime of my daughter Mary's husband, Wm. W. Brown, all her property shall be held and managed by my son James, in trust for her use and benefit, and for the use and benefit of her daughter Ophelia, in case of Mary'

death, while her said husband is living ; and secondly, *in case either of my daughters above named should die leaving no child living at her death, then her portion shall be equally divided between her sisters only, my sons taking no part thereof.*"

These are the only portions of it that bear upon the question now presented.

After the death of the testator's widow, and in 1867, the daughter Charlotte died childless.

In 1877 the daughter Mary died, leaving an only child, the appellant, Ophelia Gorham. Up to this time there had been no division of the estate ; but it was had after Mary's death, and there was allotted to Ophelia her mother's share and one-half the portion of Charlotte ; and to Sarah, the only surviving sister, her original share and one-half of that of Charlotte, the land so allotted to her being the seventeen acres now in dispute, and the right to which depends upon the construction of the above clauses of the will. She died childless in 1885, leaving a will by which she attempted to devise to and for the benefit of the appellees the land thus obtained. The child of Mary now denies her right to do so, and claims that she, as the representative of her mother, is entitled to the property by virtue of the will of James Betts, her aunt having died childless. The half of Charlotte's portion, which Sarah acquired by survivorship, vested in her in fee. She therefore had the power to devise it. In cases of this character it is a general rule that accruing shares vest absolutely.

Mr. Jarman says : " Where a man gives a sum of money to be divided amongst four persons as tenants in common, and declares that if one of them die before

twenty-one or marriage, it shall survive to the others, if one dies and three are living, the share of that one so dying will survive to the other three; but if a second dies nothing will survive to the remainder but the second's original share, for the accruing share is as a new legacy, and there is no further survivorship." (2 Jarman on Wills, 620.)

True, this rule will give way to a positive indication of a contrary intention in the testator, but it must clearly appear. Indeed, Mr. Redfield says: "It seems to have been early adopted as a rule of construction in regard to shares which had once vested by survivorship, that they should not so vest again, unless by force of express words to that effect." (2 Redfield on Wills, 373.)

The rule will only yield to the intention where it is manifest from his will that the testator intended the entire property to pass in a mass to the ultimate object of his bounty, and that an accruing share should be carried over with an original one to such object. No such manifest intention appears here. There is nothing in the will compelling such an implication.

The right to Sarah's original share remains to be determined.

The counsel for the appellants urge with commendable zeal and ingenuity that, upon her death without children, it, under her father's will, passed to the appellant, Ophelia Gorham; or if not, that it certainly lapsed to his estate, and, therefore, the lower court, in any event, should not have dismissed the appellant's petition, as Ophelia, in right of her mother, has an interest in it.

The devise over in this instance is not in terms to the "survivor," as in most of the reported cases, but to the sisters, and "sisters only."

There has been much discussion as to the effect of provisions in wills in favor of "survivors." The controversy has been whether the word should have its literal and natural meaning, or whether it should prima facie be construed as equivalent to the word "others" in the absence of circumstances or something in the context showing that it was used in a strictly literal sense.

There is a line of older cases, as in Wilmot v. Wilmot, 8 Vesey, Jr., 10, holding to the latter view. Some eminent judges have also held that the words were convertible terms; but where the word "survivor" has been given the force of "other," thus letting in the issue of a deceased member of a class by inheritance from the parent, it has been usually done, as was the case in Harris, &c., v. Berry, &c., 7 Bush, 114, to avoid some consequence which it was quite certain the testator did not intend. It was necessary in order to effect an intention appearing upon the entire will. The later cases, however, hold that the word "survivor," when unexplained by the context, is to be given its natural meaning, and interpreted according to its literal import. As this rule may often defeat the unexpressed intention of the testator, courts readily listen to any argument drawn from the context or other provisions of the will, showing that "survivor" was used by him as synonymous with "other;" but unless this appear, it may now be regarded as the settled rule that its literal meaning is to be given to it. (Best

v. Conn, &c., 10 Bush, 36; Bayless, &c., v. Prescott, &c., 79 Ky., 252.)

Here, however, in the event of one of the class dying childless, her portion is to go to her "sisters only, my sons taking no part thereof." This language is plain and unambiguous. The intention is not left to conjecture. It cannot be reached by departing from the plain meaning of the words used, because there is nothing upon which to base such a departure. His language is to be construed, and not changed. As the intention is to be regarded, if it be apparent from the entire language of the will, then it must be so construed. In this will, however, there is nothing, either expressly or impliedly said, as to the children of the devisees taking, and Ophelia was then in being, and in fact named in it. If Charlotte had survived Mary, and then died childless, Ophelia would not have been entitled to any of her portion, because under the plain language of the will it would·have passed to the surviving sister, Sarah.

The devise to the daughters was in fee upon condition. A defeasible fee was created, but only so long as there was a survivor of the class named. The devise over was to a surviving *sister*. When but one remained alive there could be no defeasance, although she might die childless. The devise over was no longer effective. The defeasible character of the fee ended when but one sister remained alive. The defeasance could no longer prevail. The testator declared that if one of the three sisters died childless, her portion should go to "her *sisters* only, my sons taking no part thereof." It is but a question of intention; and the testator knew

that, under the plain language used by him, the right to the property was limited to the sisters, and that its defeasible character must necessarily end when but one of them remained alive. He must, therefore, have intended that the fee-simple should then vest in her. This being so, she had the power to dispose of it by will, and there was no lapse of the devise as to even her original share, although she died childless.

Judgment affirmed.