CASE 101—PETITION EQUITY—MAY 21.

## Williams, &c., v. Williams, &c.

91 547
e110 904

APPEAL FROM UNION CIRCUIT COURT.

1. CONSTRUCTION OF DEVISE—VESTED INTERESTS.—The law favors that construction of a devise which will cause the interest to vest and not be contingent, and, therefore, the adverbs of time "when," etc., "then," etc., will be taken as expressing the time when a remainder shall take effect in possession, and not when it shall vest.

2. SAME—WORD "OR" CONSTRUED AS "AND."—In construing a devise the word "or" will be changed to "and" when necessary to effectuate the true intention of the testator.

3. SAME.—A testator provides by his will that "my wife shall have one-third of my landed estate during her natural life, and at her death the whole of my landed estate goes to my son or his heirs." After making a bequest to his step-son, the testator provides by a subsequent clause of his will that "when my son shall arrive at manhood, or is twenty-one years of age, then all my property, except that herein willed to my step-son, shall go to my son or his heirs." The testator's son having died before arriving at twenty-one years of age, this is a contest between his mother and half-brother on the one side and the kindred of his father, the testator, on the other, as to who are the owners of the estate devised. *Held*—That an absolute estate, subject

only to the widow's life interest in one-third, vested in the son upon the testator's death, and he having died in infancy, the testator's kindred take the estate by virtue of section 9, chapter 31, General Statutes. The words "or his heirs" are to be construed as if the word "or" were "and," and are, therefore, to be treated as words of limitation, and not as indicating the persons who, in the event of the son's death in infancy, are to take as devisees in lieu of him.

4. SAME.—If the widow was entitled to the use and enjoyment of more than one-third of the land, her possession was for the use of the testator's son, and consequently her right to such possession terminated at his death.

WM. LINDSAY FOR APPELLANTS.

1. There is nothing in the will which gives the widow the right to use and control the entire farm until the time when the son would have reached the age of twenty-one years. But even if the will gives her that right, appellants are entitled to maintain this action in order to have their rights determined. (Simmons v. McKey, 5 Bush, 25.)

2. The son took an estate in fee, the word "heirs" being used as a word of limitation, and not a word of purchase, and upon the death of the devisee in infancy the title to the lands passed, under the provisions of our statute of descents, to the kindred of the testator. (General Statutes, chap. 31, sec. 9.)

To escape a manifest absurdity the word "or" should be read "and." (Robb v. Belt, 12 B. M., 647; Jarman on Wills, 5th ed., Bigelow's, pages 505, 515.)

F. M. BAKER, G. H. TOWERY ON SAME SIDE.

1. Even if the will postpones appellants' right of possession, they may maintain this action to have their rights passed upon and defined. (Simmons v. McKey, 5 Bush, 25.)

2. The word *or* in the expression *or his heirs* is to be read *and*. (Robb v. Belt, 12 B. M., 643.)

3. But if not, then the word "heirs" is to be construed in the sense of children. (Williamson v. Williamson, 18 B. M., 375.)

But if it was used in its legal sense, it applies to "those upon whom the law casts the inheritance," who, in this case, are the brother and sisters of the testator. (Gen. Stats., chap. 31, sec, 9; Chitty's Blackstone, second book, p. 179; case of Henry Clay's Will, 2 Duv., 296.)

4. The right of the heir to inherit can only be displaced or precluded by direct words or plain intention evincing a desire on the part of the testator that he shall not take. (Allen, &c., v. Allen, &c., 18 How., 390; Augustus, &c., v. Seabolt, &c., 3 Met., 155; Clarkson, &c., v. Clarkson, &c., 8 Bush, 655.)

5. The son took a vested and not a contingent interest. (2 Cooley's Blackstone, pages 163, 168, 169, 172; 4 Kent, pages 228, 232, 233.)

YEAMAN & LOCKETT FOR APPELLEES.

Brief not in record.

Cited in petition for rehearing: Smith v. Bell, 6 Peters, 75-83; Parish v. Vaughn, 12 Bush, 101; Jarman on Wills, vol. 2, 169; *Idem*, vol. 1, 760; Willitts' Adm'r v. Butler's Adm'r, 84 Ky., 318; Briscoe v. Wickliffe, 9 Dana, 192; Danforth v. Talbott, 7 B. M., 623; Grigsby v. Breckinridge, 12 B. M., 632; Allan v. Vanmeter, 1 Met., 264; Redfield on Wills, vol. 1, pp. 486-7; Robb v. Belt, &c., 12 B. M., 643; Gedges v. Western Baptist Theological Institute, 13 B. M., 580.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Henry H., devisee and only child of S. G. Williams, having died in infancy without issue, kindred of the testator brought this action against his widow and step-son, asserting title to the whole and seeking immediate possession of two-thirds of real property left by him. But the lower court, without deciding who owns the fee, dismissed the action, upon the ground the widow is under the will entitled to not only a life estate in one-third, but use of the residue of land until the time when Henry would, if living, have become twenty-one years of age.

For proper determination of questions arising we here copy the entire will, as follows: " First, it is my will that my wife Ellen shall have one-third of my landed estate during her natural life, and at her death the whole of my landed estate *goes to* my son, Henry H. Williams, *or his heirs.*

"After my death it is my will that my step-son, Collie Hammack, shall remain on the farm with his mother and his brother, and that Collie shall assist his mother in carrying on the farm until Collie is twenty-one years of age. It is my will that my step-son, Collie, shall now be given one horse, and that

when he, Collie, is twenty-one years of age, that he shall be paid by my executor, or the one having charge of my estate or affairs, the sum of fifteen hundred dollars, the same to be paid out of my estate, and the same to be paid in cash.

"It is my will that after my just debts are paid, that all my surplus stock on the farm shall be disposed of, and if there should be a balance in money, then said money shall be put out on interest, and same used for the purpose of schooling my son, Henry H. Williams. It is my will that my son, Henry H. Williams, be given a colt now. It is my will that *when my son, Henry H. Williams, shall arrive at manhood, or is twenty-one years of age, then* all my property, except the fifteen hundred dollars herein willed to my step-son, Collie Hammack, personal and real, *shall go* to my son, Henry H. Williams, *or his heirs.* It is my will that should my step-son, Collie Hammack, wish to attend school during winter months, and board at home, then nothing be charged him for said board.

"It is my will that my wife, Ellen, shall have all my household and kitchen furniture, beds, bedding, books, &c., and all fowls. It is my will that all plows, harness, gearing, machinery, &c., necessary to run the farm, and now on hand, be not sold.

"It is my will that horses and stock, sufficient to run the farm, shall remain on the place, and that a sufficient amount of corn, wheat and hay shall be exempt from sale, and enough of same be kept on the farm to answer all purposes for twelve months, and that all meat and lard now on hand in the smoke-house shall remain on the place.

"It is my will that the Gill boys finish the barn which they have under contract on the place, and my administrator will settle for the same. I want S. G. McGill to administer on my estate, to act and to be guardian for my son, Henry H. Williams."

Though the will was drafted unskillfully, the testator evidently had a fixed and matured plan for disposing of his estate, and was unusually precise and particular as to details. He appears to have possessed a general knowledge of the dower and distributive share to which his widow was entitled by statute, and been careful to provide in his will a full equivalent therefor, but no more. What he desired his step-son to have was specially mentioned, and the residue of his property, personal and real, was, in express and comprehensive terms, devised to his son, and a guardian appointed for the manifest purpose of controlling and preserving it for his sole use ; and as it does not appear that after payment of debts and legacy to the step-son, with which the personal property was clearly intended to be first charged, there would have been certainly left enough of it to maintain or perhaps properly educate his son, the testator must have intended the guardian, who had the undoubted power, to apply rents and profits of the land for such purposes rather than to leave his son dependent upon his mother, who might again marry. Therefore, while it may be fairly inferred the testator wished and expected his son to reside during minority at the homestead with and in custody of his mother, for which she would have been entitled to reasonable compensation, it seems to us, if he had

intended her to have for any period of time, to the exclusion of that son, the use and enjoyment of more than one-third of the land, he would have, in explicit terms, said so. Even assuming the word farm, as used in the will, embraces all the land, still her possession of that part in which she had no life estate would have to be regarded, in absence of an express provision to the contrary, for use of the testator's son and residuary devisee, and consequently her right to such possession, if she had any, terminated at his death, unless she and his half-brother thereupon became owners of the fee.

The theory upon which they base their claim of ownership is, that Henry took under the will a mere contingent interest, and having died during life of his mother, and before he arrived at twenty-one years of age, they being the persons designated in the will "his heirs," became owners of the land as devisees in substitution of him; or that even if the estate vested in him at death of his father, still, having been defeated by his death occurring as it did, they, as his right heirs, are now entitled.

But the kindred of the testator contend an absolute estate, subject only to the widow's life interest in one-third, vested in Henry, and they are now owners in virtue of section 9, chapter 31, General Statutes, as follows: "If an infant dies without issue, having title to real estate derived by gift, devise or descent from one of his parents, the whole estate shall descend to that parent, or his or her kindred, as hereinbefore directed, if there be any; and if not, then in like manner to the other parent, or his or her kindred;

but the kindred of one shall not be so excluded by the kindred of the other parent, if the latter is more remote than the grandfather, grandmother, uncles and aunts of the intestate or their descendants."

If that section is to govern in this case, Henry's half-brother has no interest whatever in the land, and his mother only a life estate in one-third. (Driskell v. Hanks, 18 B. M., 855.) But it can not apply unless he had at time of his death an estate of inheritance, because, according to the only admissible construction, kindred of the testator take, if at all, by descent from his son, not as devisees under the will.

As the two clauses disposing of the land, though somewhat different in form of expression, are not inconsistent in meaning or effect, but connected and co-operative to the same end, and no reason appears for making different disposition of parts of the same land to the same and only devisee, we think the interest of Henry, whether contingent, or if vested, yet defeasible, or absolute and indefeasible, was designed to be of the same nature in all, except the widow's life estate, which could not be defeated, made necessarily difference in time of enjoyment. Consequently, even if either the arrival of Henry at the age of twenty-one years, or the death of his mother was, both could not have been intended as determinate events for vesting his interest in the land.

Although the words "shall go," occurring in the second of the two clauses in question, might in some cases, if used relative to a particular time or event when an estate is to vest, import a contingency or condition, we think, for several reasons, they were

not intended to have such effect in this case. First, the time or event when, in the language used, "all my property, * personal and real, shall go to my son, Henry H. Williams, or his heirs," is not when he shall arrive at twenty-one years of age, but "when he shall arrive at *manhood* or *is* twenty-one years of age," from which it is evident the testator was reckoning the time when his son would become capable of taking control and management of his estate, already vested, without aid of his guardian, rather than the time when his interest would vest, which, nothing to the contrary being said, would be immediately. Second, such effect of the words involves intention of the testator to either give to his widow, during infancy of his son, use of the entire estate, which we have said could not have been the case, or else to leave dormant during that period all except the widow's dower and the legacy to his step-son, which is never to be presumed. Third, the provision in the first clause that the *whole landed estate* "goes to" his son or his heirs at death of the widow, no matter how soon after death of the testator himself it should occur, and that he knew might occur before his son was twenty-one years of age, shows the latter event was not intended to be a contingency upon which, nor time when, his interest in any part of the estate would vest; for the words last quoted in terms comprehend the whole, and, considered in connection with the other clause, clearly signify a vested interest in all the land at the testator's death, only possession of the dower land being postponed until death of the widow; otherwise the two clauses could not be reconciled, nor full meaning and effect given to either.

If there was any room for doubt on the subject, settled rules of construction would determine the question the same way. The law favors that construction of a devise which will cause the interest to vest, and not be contingent. And, as said in Williamson v. Williamson, 18 B. M., 329, "it has, therefore, been held that the adverbs of time, *when*, &c., *then*, &c., do not make any thing necessary to precede the vesting of the remainder, but only express the time when the remainder shall take effect in possession, not when it shall become vested. And this court has recognized a distinction between the event of a devisee attaining a particular age, and events, such as marriage, with regard to which there is an uncertainty, not only as to their happening, but also as to the time at which they will happen, if at all." Accordingly it is held that "in reference to a devise to A *if* or *when* he attains a certain age, that the law, in ascertaining the intention of the testator, may regard him as looking only to the point of time when the event referred to would certainly happen, if at all, and not to the happening of the event, and that the devise might be construed as referring to a certain time which must come, and thus being uncontingent, be effectual to convey an immediate vested interest." (Briscoe's Devisees v. Wickliffe, 6 Dana, 162; Danforth v. Talbot, 7 B. M., 628; Grigsby v. Breckinridge, 12 B. M., 632; Allan & Wife v. Vanmeter's Devisees, 1 Met., 264.)

The decisive question is whether the words "or his heirs," used in both clauses, are to be treated as words of limitation, which involves changing the word *or* to

*and*, or as indicating an interest though vested, defeasible, which will require additional and explanatory words. To literally interpret the second of the two clauses would produce absurdity, for as Henry could not have arrived at the age of twenty-one years so as to take the real and personal property mentioned without being then alive, the testator certainly did not contemplate he would or could in that case have heirs to take in lieu of him, or at all. It thus results that to give full effect to the phrase "his heirs" either *or*, as there used, must be changed into *and*, or other words added, showing intention to make defeasible Henry's interest, which, as we have said, vested at death of his father. And, of course, whatever change or addition be made in one must take place as to the other clause.

"By far the most numerous class of cases exhibiting change of a testator's words are those in which the two words *or* and *and* are used without due regard to their respective import. And accordingly courts have often been called upon to rectify blunders of this nature; so often, indeed, as to have swelled the cases on the subject into a mass requiring much attention and discriminating arrangement in order to deduce from them intelligent and consistent principles." (Jarman on Wills, volume 2, page 81.)

The same author says : "*Or* has often been changed into *and* when interposed between the name of the devisee and words of limitation introduced into a devise, as in the case of a devise of real estate to A *or* his heirs, or to A *or* the heirs of his body." On the other hand, "a strong tendency of modern cases cer-

tainly is to consider the word *or* as introducing a substituted gift in the event of the first legatee dying in the testator's life-time ; in other words, as inserted in prospect of, and with a view to guard against, failure of the gift by lapse." (Page 93.)

The latter rule has no application to this case, but the first does apply, and is entitled to weight in determining the testator's meaning, especially if he has elsewhere in his will, without consideration, or from lack of discrimination, used one of the words when the other would more accurately express his meaning, as was done in one of the clauses where he said: "When my son  *  shall arrive at manhood, *or* is twenty-one years of age."

If that change be not made in this case, then such words will have to be added as fully express a purpose of the testator that *in case, or in the event of,* the death of his son before arrival at twenty-one years of age, the whole residue of his estate, personal and real, was to go to the persons then answering the description of "his heirs," which, it seems to us, would not comport with either the general context or plan of his will. For, first, it is plain he expected his son in the usual course of nature to survive his mother, thus leaving the testator's step-son, stranger to him in blood, alone to take his entire estate in case of the death of Henry before manhood, which, however, it is equally plain he did not expect. Second, according to the scheme adopted by the testator, his entire estate was evidently intended to be disposed of, and thus arises the legal presumption the devise to his son was designed to be indefeasible.

Third, in view of the care and precision with which each clause of the will was written, and each devise described and explained, if he had intended Henry to have less than a fee-simple in the land, it would have been fully and clearly so provided.

In Robb v. Belt, &c., 12 B. M., 643, cited by counsel, the clause of the will upon which the question of changing words arose is substantially as follows: "I give to my wife all my estate, real and personal, during her widowhood. Should she marry, then I desire all my estate be equally divided among my eight children, *or* the heirs legally begotten of their bodies; and should she die without marrying, the property to be equally divided among my eight children, *or* their heirs above expressed."

It was held the word *or* should not be changed into *and* for reasons not applying to this case, which differs essentially from that. There it was said the testator intended "to control the property until the happening of the event, when the division was to be made, and that whatever interest any one or all his children may have had upon his death was subject to that control, and, therefore, subject to be defeated or terminated by the death of such child before the time of division, and belonged by the will to the heirs of the body of such decedent living at the time fixed for the division."

In this case all the property was disposed of by the will, and, as we have tried to show, the interest of the testator's sons was intended to be neither contingent nor defeasible, but vested and absolute. There the testator looking to the event on which the di-

vision was to take place, as one which might not happen for an indefinite period, and to the number of his children, may have reasonably expected some one or more of them to die before the time for the division, and, therefore, provided for such contingency. Here the land was given to the testator's only child and residuary devisee in evident expectation of his being alive at the age of twenty-one years, and having no heirs. The persons to take in that case, in the event of one or more of the testator's children dying before the event, were the heirs legally begotten, of such decedents. Such construction of the will in this case involves a design of the testator that his step-son, his mother being dead, would alone take.

In our opinion the change of the word *or* into *and*, as it occurs in the two clauses of the will, is clearly necessary to effectuate the true meaning and intention of the testator, which was to invest his son with the fee-simple title to the land, and that appellants, consequently, now own in virtue of the statute. Wherefore, the judgment is reversed, and cause remanded for proceedings consistent with this opinion.