CASE 72.—ACTION BY W. G. SIMPSON AGAINST A. M. ADAMS
AND OTHERS TO QUIET TITLE TO HIS LAND.—
January 14.

# Simpson v. Adams, &c

Appeal from Owen Circuit Court.

JOHN M. LASSING, Circuit Judge.

Judgment on appeal affirmed—Judgment on cross
appeal affirmed in part and reversed in part.

1. Wills—Construction—"Dying Without Issue."—Where an es-
tate is devised to one for life, with remainder to another,
with gift over on the remainderman dying without issue, the
words "dying without issue" are restricted to death before
the termination of the particular estate, but where there is
no intervening estate, or where there is a period fixed for dis-
tribution, the words, in the absence of a contrary intent,
create a defeasible fee, defeated by death at any time with-
out issue.

2. Same—Estates Acquired.—Testator devised his real estate to
his grandsons, directed that each of them should pay to a
third person an annual sum for life, and provided that, if
either of the grandsons should die without children, the prop-
erty devised should descend to the survivor and his descend-
ants. Held not to create an estate tail, converted into a fee
simple under Ky. Stats., 1903, section 2343; the word "body,"
or some other words of procreation, being necessary to make
an estate tail.

3. Same.—Testator gave his household goods, etc., to his daugh-
ter for life, and at her death to her two sons, or the survivor
of them, or their descendants. Held, That the property
passed at the daughter's death to the sons then living abso-
lutely.

4. Same.—Testator devised real estate to his grandsons, subject
to a certain charge, and directed that, if either of the grand-
sons should die without children, the property should descend
to the survivor and his descendants. Held to vest the fee

simple in the grandsons, subject to be defeated as to either by his dying without issue at any time.

5. Same—Title of Purchaser from Devisees.—Testator devised real estate to his grandsons, vesting in them the fee simple, subject to be defeated as to either dying without issue at any time. The grandsons and their mother mortgaged the premises, and a third person purchased the same at a foreclosure sale. He thereafter conveyed the premises to the mother, who failed to pay the purchase money notes, and the land was ordered sold to pay them. The third person became the purchaser. Held, That the third person acquired complete title to the land, except the contingent remainder vested by the will in the descendants of either of the grandsons, if either should die without issue after the death of the other with issue living.

6. Pleading—Allegation of Facts.—An amended pleading, which alleges that the proof shows a certain thing to be true and that the proof is uncontradicted, is properly disallowed, for pleadings should positively allege the existence of facts.

7. Judgment—Foreclosure of Vendor's Lien—Conclusiveness.—A judgment enforcing a vendor's lien to the amount of purchase-money notes is conclusive on the question whether the notes were in part without consideration, and such a defense is not available in a suit to quiet title by the purchaser at the foreclosure sale.

HAZELRIGG, CHENAULT & HAZELRIGG and H. G. BOTTS for appellant.

H. K. BOURNE, STROTHER & GARNET and W. S. PRYOR for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

Thomas A. Berryman died testate, a resident of Owen County, in the year 1875, the owner of a considerable estate. He left surviving him an only child, Mrs. Ann M. Adams. She had three children—two boys, the oldest of whom was then about 16, and a daughter, who was married. Among other things the decedent owned a valuable farm of 568 acres in

Owen county, which is the subject of this controversy. After his death Mrs. Adams and her two sons mortgaged the farm about the year 1886 to the Mutual Life Insurance Company of Kentucky to secure a debt of $4,000. They failed to pay the debt. The insurance company foreclosed the mortgage. The debt then amounted to $5,961.79. At the sale H. G. Simpson became the purchaser. The sale was confirmed, and the land was conveyed to him. He afterward conveyed it to Mrs. Adams for $7,188, of which she paid $1,500 in cash and gave four notes for $1,422 each. These notes were assigned by Simpson to the insurance company. She failed to pay the notes, and the insurance company brought a suit for the sale of the land. It was ordered sold, and the sale was made on November 14, 1902. Simpson then again became the purchaser, the sale was confirmed, the land was conveyed to him, and he was put in possession. After this he brought this suit to quiet his title to the land against descendants of Mrs. Adams. The circuit court dismissed his petition, and he appeals.

The case turns on the proper construction of the will of Thomas A. Berryman, which is as follows:

"This is my last will and testament.

"First. I direct that all my just debts be paid.

"Second. My executor is given power and is directed to sell, at either public or private sale, all or any part of my real estate in Owenton and its vicinity upon such terms as he or she may deem best and, on failure to sell, rent the same to good and careful tenants.

"Third. I give to my daughter, Mrs. Ann M. Adams, all the household and kitchen furniture which I may own at the time of my death for her lifetime

and at her death the same to pass to and descend to her two sons Daniel Avery Adams and Stanley G. Adams, or the survivor of them or their descendants.

"Fourth. I desire that said two boys Daniel A. and Stanley G. Adams, who are my grandsons. shall be well educated, the course of same to be directed by their parents and that their board, tuition. and clothing be paid for out of my estate.

"Fifth. I give to my grandsons Daniel A. and Stanley G. Adams all the rest and residue of my property of every kind and character which I may own in law or equity at the time of my (Thomas A. Berryman's) death, each of them paying to their mother Mrs. Ann M. Adams the sum of $125.00 annually as long as she may live, and this annuity is directed to become and be a lien upon the estate devised to them, and I further direct that if either of said boys shall die without child or children that the property devised shall descend to the survivor and his descendants.

"Sixth. I make my daughter, the said Ann M. Adams, executor of this will and she is requested to see to its execution to its full extent and is directed to make any and all deeds for real property which I sold when the purchase money is paid.

"Seventh. It may be noted that I have omitted in this paper all reference to the name of my granddaughter, Lucy G. who has recently married one Andrew Louden. This I have purposely done not intending her to have any part of my estate.

"August 15th, 1874.

"Thomas A. Berryman."

Mrs. Adams is dead. Daniel A. Adams is unmarried and about 50 years of age. Stanley G. Adams is married and has four children. The question pre-

sented is what estate Daniel A. Adams and Stanley
G. Adams take under the will. In the case of Harvey
v. Bell, 118 Ky. 512, 26 Ky. Law Rep. 381,
81 S. W. 671, we summed up the decisions
of the court as follows: (1) "Where an estate
is devised to one for life, with remainder to
another, and, if the remainderman die without chil-
dren or issue, then to a third person, the rule is that
the words 'dying without children or issue' are re-
stricted to the death of the remainderman before the
termination of the particular estate." (2) "On the
same principle, where property is devised to one or
more infants, and is to be held by their trustees or
guardians until they are 21 years old, and then be
turned over to them or divided between them, with
the proviso that, if they die without issue, it shall
go to the survivors, or, if all die, to a third person,
it has been held that the limitation as to dying without
issue is to be limited to a death in infancy before the
period of distribution." (3) "And where by the
will the devise is to a class, and the period of division
is postponed, even where the devisees are not infants,
it has been held that the limitation as to dying without
issue must be confined to a death without issue before
the period of division fixed by the will." (4) "On
the other hand, where there is no intervening estate
and no other period to which the words 'dying with-
out issue' can be reasonably referred, they are held,
in the absence of something in the will evidencing
a contrary intent, to create a defeasible fee, which
is defeated by the death of the devisee at any time
without issue then living." In that case we further
said: "All the cases recognize the rule that, where
there is any period to which words of survivorship
can be reasonably referred, they will be so construed.

All the cases also recognize the rule that in the end all rules of construction are but means of ascertaining the testator's intention, and that, when this is apparent from the whole will, it must be enforced. No Procrustean rule can, therefore, be laid down as to the construction of words of survivorship; for, while the words in one clause may have a well-defined legal meaning, there may be other things in the will making it manifest that the testator actually used the words in a different sense, and when this is the case the rights of the parties must be determined by the meaning of the will taken as a whole." The last clause of section 5 of the will is not grammatically expressed, and it seems that the word "that" was a clerical error for "if" and that the word "and" is used in the sense of "or." If this is true the clause would read thus: "I further direct, if either of said boys shall die without child or children, that the property devised shall descend to the survivor or (if dead) his descendants." Neither of the boys were grown when the will was made. The testator did not contemplate, if one died childless, the survivor and his descendants should jointly take the property. His intention was that, if either of the boys died without issue, his share should go to the other if living, or, if he was dead leaving descendants, to them.

We see nothing in the will creating an estate tail. None of the technical words necessary to create such an estate are used. By section 2343 Ky. Stats., 1903, all estates which at common law would have been deemed estates entailed are made estates in fee simple. The rule as to what words were necessary to create an estate tail at common law is thus stated in 2 Blackstone, 114: "As the word 'heirs' is necessary to create a fee, so in farther limitation of the

strictness of the feudal donation the word 'body,' or some other words of procreation, are necessary to make it a fee tail, and ascertain to what heirs in particular the fee is limited. If, therefore, either the words of inheritance or words of procreation be omitted, albeit the others are inserted in the grant, this will not make an estate tail. As, if the grant be to a man and his issue of his body, to a man and his seed, to a man and his children or offspring, all these are only estates for life; there wanting the words of inheritance, his heirs." By section 2342, Ky. St. 1903, words of inheritance in a deed or will are not necessary to create a fee; and though the devise to the survivor and his descendants did not at common law create an estate tail, under our statutes it creates more than a life estate in the survivor. The meaning is that, upon the death of one of the boys without child or children, the other brother, if living, takes the property, and, if he is dead, it passes to his descendants. The word "descendants" was used because this court has held that "children" did not include grandchildren. Churchill v. Churchill, 2 Metc. 466.

Under rule 1 above quoted the household and kitchen furniture, which was devised to Mrs. Ann M. Adams for life and at her death to her two sons, Daniel A. Adams and Stanley G. Adams, or the survivors of them or their descendants, passed at her death to the sons then living, absolutely. The devise as to the land owned, however, is different. Mrs. Adams is not given a life estate in the land. The land is devised to the two boys, who are charged with an annuity of $125 annually to her. The land was renting for $1,200 a year, and the testator evidently contemplated that the annuity would be paid out of the

rent; but to secure it a lien was given on the property. We do not see how this clause of the will can be construed to refer to the death of one of the boys in the lifetime of the testator; for not only is the annuity charged to the estate devised to each of them, but it is provided that in case of the death of either without child or children the property devised shall descend to the survivor and his descendants. It could not descend before the testator's death. The word "descend" shows that the testator had in mind that in case either of the boys died without child or children the property was to descend from him to the survivor and his descendants; and, as the will would not take effect until the testator's death, he must have contemplated in this provision the death of one of the boys after his death.

The will does not provide for a division of the estate when the boys became of age. The devise was immediate, and their rights were in no manner affected by their becoming of age. There is nothing in the will to show that the testator contemplated in the provision under consideration the death of the devisees before they were of age. The case is one where there is no intervening estate and no other period to which the words 'die without child or children'' can be reasonably referred, and falls under rule 4 above quoted. Each of the boys took a fee in a moiety of the land, subject to the annuity charged, and subject to be defeated by his dying without issue. If either dies leaving children, his estate will not be defeated, but the defeasance not having occurred, becomes absolute. It cannot be known whether, if one shall die without issue, the other will be living, or, if dead, what descendants of his will be then living. On one of them dying without issue after the death

of the other leaving issue, the estate will vest in the descendants living at the time when the defeasance occurs; and, as it cannot be told who will take the estate in such event, until the event occurs, it is what is called a "contingent remainder." There is no devise over beyond the boys. It is not provided, if they die leaving issue, the estate shall go to such issue. There is no devise over in case both die without issue. The testator plainly did not intend his granddaughter to have any part of his estate, and he gave his daughter what he intended her to have. If Daniel A. Adams shall die childless, leaving his brother surviving him, the latter will take the whole estate, and on his death leaving children his title will not be defeated, and Simpson's title will be absolute; but, if Daniel A. Adams shall survive his brother and then did childless, his title will be defeated, and his half of the land, his brother being dead leaving issue, will pass to his brother's children or descendants.

The farm was the testator's home. He intended to confine it to the two grandsons and their descendants. He did not intend, if one of the grandsons died at any time without issue, that his part of the estate should go to strangers; and from his point of view it was not material when the death of the grandson occurred without issue. He vested the fee simple in the grandsons, subject to be defeated as to either of them by his dying without issue at any time Simpson took by his purchase all the title possessed in the land by Ann M. Adams, Daniel A. Adams, and Stanley G. Adams; but he did not acquire by his purchase the contingent remainder vested by the will in the descendants of either of them, should one die without issue after the death of his brother with issue living. Mrs. Louden and her children have no interest in the

land. The circuit court properly dismissed the petition of Simpson as to the children of Stanley G. Adams; but he should have quieted Simpson's title as to all of the other defendants.

During the progress of the case it appeared that when Simpson conveyed the property to Ann A. Adams, a part of the consideration was certain tax receipts which he held against the land, amounting to something like $800 or $1,000. Daniel A. Adams after this testified that these taxes had been paid before that deed was made, and the defendants afterwards offered an amended answer, in which they pleaded that the proof of Daniel A. Adams showed that all of these taxes had been paid before the date of that deed, and that this proof was uncontradicted. The court refused to allow the amended answer to be filed, and of this the defendants complain on the cross-appeal. The court properly refused to allow the amended answer to be filed, for the reason that it does not state the facts, but only pleads the evidence of the facts. The allegation that the proof shows such and such a thing to be true and that this proof is uncontradicted is not an allegation that the fact exists. Facts must be stated in a pleading positively, and not the evidence of the facts. Not only so, but if these taxes had been paid prior to the making of that deed, then the notes which were given for the land by Mrs. Adams were to this extent without consideration, and this defense should have been pleaded when the suit was brought on the notes to enforce the lien on the land. The parties are now concluded by the judgment enforcing the lien and selling the land for the debt; for that judgment is necessarily a determination that Mrs. Adams then owed the amount of the notes.

The judgment on the cross-appeal is affirmed. On the original appeal is is affirmed as to the children of Stanley G. Adams; but it is reversed as to the other defendants, with directions to the circuit court to enter a judgment as above indicated.

LASSING, J., not sitting.