## Brierly's Executor and Trustee et al. v. Nelson et al.

(Decided February 19, 1929.)

BRUCE & BULLITT, JOHN E. TARRANT and TRABUE, DOO-LAN, HELM & HELM for appellants.

ROBERT F. VAUGHAN and BARRET & NETTELROTH for appellees.

OPINION OF THE COURT BY COMMISSIONER STANLEY —Affirming.

This appeal presents for review a judgment construing the will of Edward Brierly, particularly as it disposes of the present residuary estate amounting to about $130,000. The original will was executed May 28, 1889. Between that date and his death in December, 1899, testator added four codicils, and, as thus modified, the will is quite lengthy and somewhat involved.

The portion of the estate with which we are here concerned was devised in the original will to the Fidelity Trust & Safety Vault Company (now Fidelity & Columbia Trust Company) in trust for the payment of annuities in various sums to different nieces and nephews with remainder to their respective issue, and if none then specifically to the surviving nieces or the issue of such nieces as then might be dead. The principal effect of the codicils was to change from time to time the amounts of the annuities. The particular part of the will involved in this case is codicil No. 2, items 2 and 3. Item 1 of this codicil was later revoked and different annuities bequeathed in codicil No. 4.

Item No. 2 of this codicil directs the advancement by the trustee in his discretion of $2,000 each to testator's nephews and nieces, Edward Brierly, Jr., Mary P. Riggs, and Alfred Nelson; and $1,000 to Josephine Sprowl Testator then directed his executor to pay to each of these four "for and during his (or her) natural life an undivided one-seventh of the net income of the said trust estate, with remainder to his (or her) lawful issue." It is then provided:

"In order to ascertain the four sevenths income and remainder hereinbefore devised to my said

nephews and nieces and their lawful issue, the said trustee shall divide my said trust estate as soon after my death as practical into two parts, one part containing four sevenths and one part three sevenths, and pay to my said nephews and nieces for and during their natural lives the income as hereinbefore directed from said four sevenths with remainder to their respective issue. If either or any of said nephews or nieces die without issue, then his or her share shall revert to and become a part of my estate as hereinafter disposed of.

"Item 3. All the rest and residue of my said trust estate including the three undivided sevenths thereof not hereinbefore disposed of and the accumulations if any thereof and every other part of my said estate not hereinbefore specifically disposed of, I will and direct my said trustee to pay the net income thereof to all of my nieces and nephews for and during their natural lives with remainder to their lawful issue, *and if any of them die without lawful issue, then to the survivors and their issue.* I will and direct that the devises to my nephews and nieces in this codicil and in my will cannot be subjected to the payment of their debts and cannot be anticipated by them."

In addition to the four legatees above named, testator had two other nieces and one nephew, namely, Elizabeth B. Stephenson, Julia B. Turner, and James C. Nelson. It will be observed that all seven of them share in the income from the three-sevenths of the estate, and that the respective remainder interests in the four-sevenths are to be added to the three-sevenths should any of the four life beneficiaries die childless. It is with the three-sevenths that we have to deal, the question presented being: How does the remainder pass upon the death of a life beneficiary without issue?

Mary P. Riggs, Elizabeth B. Stephenson and Julia B. Turner were living at the institution of this suit. Alfred Nelson and Josephine Sprowl each left children surviving. Edward Brierly, Jr., and James C. Nelson died childless. The concrete question submitted in the case is whether the remainder interests in the shares of these two go to the testator's nieces and nephews who were living at the time they severally died to the exclusion of the children of those who had predeceased them. Take,

for example, the share of Edward Brierly, Jr., who died without issue in 1927. At that time Alfred Nelson and Josephine Sprowl had been dead some time, having left children surviving, and James C. Nelson had also predeceased him but without issue. Shall Edward Brierly's share be divided into three parts, one each for his sisters, Mrs. Riggs, Mrs. Stephenson, and Mrs. Turner, or shall it be divided into five parts, each sister taking one-fifth, the children of Alfred Nelson one-fifth and the children of Mrs. Sprowl one-fifth? The lower court held the children of the predeceased life tenants shared in the estate; that is, that Edward Brierly's share should be divided into five parts.

The determination of the question rests on the construction to be given the phrase in the codicil "if any of them die without lawful issue then to the survivors and their issue." What is meant by "survivors and their issue," as used in the will? If it is to be given a strict, literal interpretation, it means only the indidivdual nieces and nephews of testator who were living when such a one died. If it is to be given a comprehensive and liberal interpretation, it means the class of beneficiaries surviving such a one, namely, the nieces and nephews living and the issue of those who had predeceased him.

The controlling object of the courts in construing a testamentary paper being to preserve testator's will and to promote or effectuate his expressed intention, there are two questions to be answered: First, to whom did he bequeath his estate?; and, second, how did he wish it to distributed among them? The first question as applied to this will presents no difficulty, for it is apparent that the objects of testator's bounty were his nieces and nephews and their children. The second is not so easy. The bequest of only the income to the nieces and nephews indicates his desire to preserve the corpus for their children. Although divided into two groups, there is nothing to indicate an intention to deprive any of the ultimate beneficiaries of their share if their parents should happen to die before one of the life tenants who had no children. There were two classes of beneficiaries: (1) Nieces and nephews; and (2) grandnieces and grandnephews. Testator wanted the former to enjoy the income and the latter to have the principal.

One of the guideposts leading to the ascertainment of a testator's intention is the presumption of intended

equality. While throughout this will there runs inequality as to amounts bequeathed, there is no indication that testator wanted the shares of any of his grandnieces and grandnephews diminished by reason of their parents having predeceased those dying without issue. As stated in Page on Wills, sec. 923: "The intention of a testator to exclude those who would naturally be included within the class designated must be clear." Had the present status of the parties existed at the time of the execution of the will, it is not likely—judging testator's attitude from this paper—that the children of Mrs. Sprowl and Mr. Nelson would have had their part diminished and the children of Mrs. Turner, Mrs. Riggs, and Mrs. Stephenson increased by the sums intended for Edward Brierly, Jr., and James C. Nelson.

It has become rather a trite saying that in construing a will it must be taken by the four corners and all parts of it considered as they may bear on the specific portion being interpreted. As stated, the only material changes wrought on the original will by the codicils were in the sums bequeathed. The disposition of the estate as made by the original will is, practically, altered only to that extent. In the will is found the following provision: "At the death of said nieces and at the death of each of them, her share shall go to her lawful issue, and if none to her surviving sister *or* her issue if she be dead, *or* if none, then to my other nieces *or* their issue. And upon the death of my nephews or either of them, his share shall go to his lawful issue and if no issue to his sisters *or* their issue."

It is to be noted in case of the death of a niece or nephew without issue there is an alternative disposition to those surviving "*or* their issue." It is argued by appellants that this shows the testator knew how to make a clear alternative disposition by the use of the word "or"; that by having used the copulative conjunction "and" in the codicil he intended the share of a life tenant dying without issue to go to the surviving life tenants and at their death to their issue. We think, instead, that this clause, coupled with the fact that the codicil changed only the proportions of the beneficiaries, indicates that "survivors" as used in the codicil included all surviving beneficiaries, and that the word "and their issue" was inadvertently used instead of "or their issue."

Phrases similar to the one involved in this will have been before the court for construction on several occasions. In some of the cases a rigid definition has been given the word "survivor" and in others a flexible meaning attached. Of course, the provisions peculiar to the respective wills were controlling, and the apparent conflict in the cases turns on the difference in the wills, rather than on a different conception of the legal meaning of the word. In the one class of cases there was nothing to indicate an interpretation different from the common definition and usual acceptation of the term as including only the individuals outliving a deceased legatee. Best v. Conn, 10 Bush. 36; Bayless v. Prescott, 79 Ky. 252; Coleman-Bush Investment Co. v. Figg, 95 Ky. 403, 25 S. W. 888, 15 Ky. Law Rep. 817; Gorham v. Betts, 86 Ky. 164, 5 S. W. 465, 9 Ky. Law Rep. 607. In the other class of cases, various parts of the will were properly brought to bear on the question, and these explained the term used so that it was construed as equivalent to "others" and held to include all other legatees. In these cases it was recognized that the rule of strict interpretation yields to the intention as manifested by the instrument as a whole. We may briefly note some of them.

In Gorham v. Betts, supra, in distinguishing the cases, it is stated that "courts readily listen to any argument drawn from the context or other provisions of the will showing that 'survivor' was used by him (testator) as synonymous with 'other.' "

In Harris v. Berry, 70 Ky. (7 Bush) 113, there was a devise to the testator's 15 children, with the following proviso: "Should any of my children die before they attain lawful age without lawful issue, the portion of my estate bequeathed to them to be equally divided between the survivors." Testator's son Younger died childless. Eight of his brothers and sisters had died before him leaving issue who survived him. Four of his brothers and sisters were living at his death. It was held that Younger's estate should be divided among the testator's surviving children and the children per stirpes of his dead children. In so holding the court, in an opinion by Judge Robertson, said:

> "The leading purpose of the testator was to equalize his estate among his children and secure it to his own descendants. This is so manifest as to require no argument to prove it. Consequently to

confine the distribution of his estate to the four surviving children of the testator, and cut off the surviving representatives of his dead children, would seem to conflict with his own evident purpose of equality.

"The language of the quoted provision on that subject does not require such restriction. 'Survivor' as written, is a flexible term, not necessarily meaning the testator's surviving children only; but, when molded by the context and spirit of the will, may consistently with the literal import comprehend all his surviving descendants who were intended to be beneficiaries."

This case followed Birney v. Richardson, 35 Ky. (5 Dana) 429, to which this reference was made: "In that case, after some reasoning, and referring to Roper on Legacies, and Lord Eldon's opinion in Wilmot v. Wilmot, 8 Vesey, this court added: 'And according to that and several other analogous cases, it would seem that when a bequest is made to the survivors of any one of several children dying without issue, the testator should be understood as meaning by survivors his other children, unless they also had died without issue, because his presumed object was that all who should have issue should be entitled to an equal interest, and that nothing but death without issue should disturb that equality.'"

Of like import are Graves v. Spurr, 97 Ky. 651, 31 S. W. 483, 17 Ky. Law Rep. 411; Smith v. Miller, 47 S. W. 1074, 20 Ky. Law Rep. 910; Ruff v. Baumbach, 114 Ky. 336, 70 S. W. 828, 24 Ky. Law Rep. 1167; and Holt v. Rudolph, 184 Ky. 161, 211 S. W. 855.

Bringing these rules to bear on the phrase "survivors and their issue" in this will, we are of the opinion it should be given a liberal, comprehensive meaning.

We have not overlooked the case of Ford v. Jones, 223 Ky. 327, 3 S. W. (2d) 781; but we do not consider it applicable, for the issue involved was the time at which disposition of an estate should be made and the devisees ascertained. The bequest was to named sons to be held by them until their death, "*when* it must be divided between all my surviving children, if any, *or* their natural heirs." The references to some earlier opinions (cited supra) were as they bore on the point involved and by way of illustration. That case is not decisive of this one.

Appellants concede, if the concluding phrase of the codicil had been "to the survivors *or* their issue," there would be no doubt that issue of predeceased legatees would share in the estate of one dying without issue. We have already referred to the clause in the original will as it disposed of the remainders in the devised estates and the apparent inadvertent use in the codicil of the copulative conjunction "and" instead of the alternative word "or." In this connection another rule may be brought to bear to effectuate the manifest intention of the testator.

In the early case of Baird v. Rowan, 1 A. K. Marsh, 214, in considering a devise to executors "and to the survivors and survivor of such of them as may act," the court said: "Besides, the language of the devise to the executors would be sufficiently explicit if we give to the copulative conjunction 'and,' which connects the clause giving the land to the survivors, with the preceding clause, a disjunctive signification; and this has been often done for attaining what is otherwise the apparent intention of the testator."

And in Davie v. Davie, 81 S. W. 246, 26 Ky. Law Rep. 312, it was declared: "The authorities are numerous to the effect that it is within the power and it is the duty of the court, when necessary to effectuate the intention and purpose of the testator, to not only change or transfer 'and' for 'or,' but to transpose words and sentences when absolutely necessary for such purpose (Robb v. Bell (Belt), 12 B. M. 646; Williams v. Williams, 91 Ky. 556 (16 S. W. 361, 13 Ky. Law Rep. 293); Aulick v. Wallace, 12 Bush, 536; Moore's Adm'r v. Sleet (113 Ky. 600; 68 S. W. 642) 24 Ky. Law Rep. 426)."

To the same effect are Simpson v. Adams, 127 Ky. 790, 106 S. W. 819, 32 Ky. Law Rep. 617; Shaver v. Ewald, 142 Ky. 472, 134 S. W. 906; Orem v. Campbell, 175 Ky. 210, 194 S. W. 113.

We are therefore of the opinion that the intention of the testator as reflected in this will, and as interpreted by the rules and authorities indicated, was to devise the estate covered by the codicil which we have had under consideration to his nieces and nephews for life with the remainder to their respective issue, but, if none, their share is to be distributed per stirpes among the surviving

124

nieces and nephews and the surviving issue of those who have died.

The judgment being in accord with these views, it is affirmed.