**Harry M. SAULSBERRY et al., Appellants,**

**v.**

**SECOND NATIONAL BANK OF ASH-
LAND, Ky., et al., Appellees.**

Court of Appeals of Kentucky.

March 11, 1966.

David O. Welch, Dysard, Johnson & Welch, Ashland, for appellants.

Davis, Vigor & Ford, H. David Hermansdorfer, Gray, Woods & Cooper, Ashland, for appellees.

PALMORE, Judge.

This appeal has been presented in a succinct and civilized fashion by way of an agreed statement. CR 76.

The will of Eliza Jane Gaylord Salisbury, which was admitted to probate in 1934, established a trust for the benefit of her son, William Gaylord Salisbury, during his lifetime and directed the following disposition of the estate at his death:

"Upon the death of William Gaylord Salisbury, I direct the trust herein created to cease and determine and direct my trustees to pay and distribute all remaining trust funds in their possession to the child or children of William Gaylord Salisbury in equal shares.

"Should no child or children him survive, then I direct my Trustee to distribute three-fourths of said property

to my niece, Roberta A. Gaylord, and one-fourth thereof to my daughter-in-law, Mary Palmer Salisbury, provided always that she be the wife of and living with my son, William Gaylord Salisbury, at the time of his death. If, however, Mary Palmer Salisbury should not qualify under these conditions as the wife of and living with William Gaylord Salisbury at the time of his death, then I direct the remaining one-fourth share of the said trust fund to go to my cousin, Roberta M. Heffernan."

The controversy relates to the interest devised to Roberta Heffernan, who died intestate in 1940. Mary Palmer Salisbury, wife of William Gaylord Salisbury, died on April 1, 1960. William Gaylord Salisbury died on November 27, 1960, without issue. Roberta Gaylord (now Scheets) is still living and it is conceded that she takes three-fourths. The appellants contend that the other one-fourth goes to the collateral heirs at law of William Gaylord Salisbury. The appellees claim, and the trial court so held, that it goes to the heirs at law of Roberta Heffernan.

The trial court determined the interest of Roberta Heffernan to have been "a defeasible fee in remainder." Appellants contend it was a contingent remainder which was terminated by the remainderman's death prior to that of the life tenant. We agree that it was a contingent remainder, but not that it was terminated by Mrs. Heffernan's death.

The first argument is that the will evinced an intention that the interests of Roberta Gaylord and Roberta Heffernan should depend on their survival at the time of vesting, because it made no provision for their children whereas, in contrast, the testatrix did make provision for the children of her son, the life tenant, if he should leave any. To hold otherwise, say appellants, is to exalt artificial and subordinate rules of construction over the clear intention of the testatrix. We are not persuaded to that viewpoint.

While it is quite natural and customary to provide expressly for lineal descendants, grandchildren in particular, it does not seem in the least unusual for a testator to exhibit less concern toward the ultimate disposition of property left to those of lesser or no kinship. Indeed, the construction espoused by appellants might reduce many a vested remainder to a contingent remainder simply because the testator neglected to provide against the remainderman's failure to survive the life tenant.

The second argument is that a contingent remainder is not transmissible by intestate succession. The principal authority relied on for this proposition is Lepps v. Lee, 92 Ky. 16, 17 S.W. 146, 13 Ky.Law.Rep. 317 (1891), in which it was held (without citation of supporting authority to that effect) that while a contingent remainder may be conveyed or devised (cf. KRS 381.040), "yet, if the grantor or devisor dies before it becomes effective, and no estate has ever vested in him, the grantee or devisee takes nothing." Later decisions contain dictum to the contrary. See, for example, Fulton v. Teager, 183 Ky. 381, 209 S.W. 535, 537 (1919), and Lindenberger v. Cornell, 190 Ky. 844, 229 S.W. 54, 59 (1921). Perhaps this confusion had an unspoken role in the chancellor's choice of another label for the interest devised to Mrs. Heffernan in this case.

It was once the law in England, originating in the mists of feudal times and tenure, that the descent of real estate had to be traced from the person last seised or from the last purchaser. In the case of a life estate followed by a remainder in fee (whether vested or contingent), the designated remainderman was the last purchaser of the fee, and if he predeceased the life tenant the person to whom the fee descended could not be ascertained until the death of the life tenant, the remainderman's heir as of that time being the taker. Simes and Smith, The Law of Future Interests, § 1882; American Law of Property, § 4.73 (Vol. 1, pp. 531, 532). But even un-

der that law it would seem that Mrs. Heffernan qualifies as the "last purchaser" of the one-fourth interest, and certainly in no event could it fall to the heirs of the testatrix.

"In the United States * * * at the present time, it is everywhere held that remainders, whether vested or contingent, reversions and executory interests, in land, descend in the same manner and to the same persons as possessory interests in land * * *" Simes and Smith, The Law of Future Interests, § 1883.

"Whatever may have been desirable in feudal times, it is clear that today there is no reason why future interests should not pass on the death of the owner intestate in the same manner as possessory interests * * *. With the exception of rights of entry for condition broken and possibilities of reverter, this is what now appears to be the law in all jurisdictions." American Law of Property, § 4.74 (Vol. 1, p. 533).

"Viewing the country as a whole, it is as true as any generally stated proposition can be, that the futurity of an interest does not alter in any way the consequences of the normally operative law of intestate succession * * *. Intestate succession by the persons who became entitled at the moment of the former owner's death has been allowed as to reversionary interests of all kinds, as to powers of termination; as to remainders of all kinds; and as to executory interests of all kinds." Powell on Real Property, par. 284 (Vol. 2, pp. 507, 508).

"It has sometimes been broadly stated that a contingent remainder does not pass by descent. However, while some contingent remainders may not be descendible at common law, this unqualified statement is too broad. It is believed that a more accurate statement of the common-law rule is that where there is no uncertainty as to the person who is to take, and his surviving some particular time or event does not enter into and make a part of the contingency upon which the remainder is intended to take ef-

fect, if the remainderman dies before the contingency happens, his interest will pass to his heirs." 33 Am.Jur. 618 (Life Estates, Remainders, and Reversions, § 152).

It is settled that vested remainders pass under our general statute of descent, KRS 391.010. Rose v. Bryant, Ky., 251 S.W.2d 860 (1952). There is no plausible reason why the same should not be or is not true with respect to contingent remainders that are not conditioned expressly or by implication on the remainderman's survival at the time of vesting. To the extent that it holds otherwise, Lepps v. Lee, 92 Ky. 16, 17 S.W. 146, 13 Ky.Law Rep. 317 (1891), is overruled.

The trial court determined that the interest of Roberta Heffernan passed at her death to her heirs at law, two sons, James Meade Heffernan and Hooper Ward Heffernan, in whom the one-fourth remainder interest vested upon the death of the life tenant, William Gaylord Salisbury. It is our opinion that this result was correct.

The judgment is affirmed.