## Biggs et al. v. Fidelity & Columbia Trust Co. et al.

(Decided March 25, 1938.)

CHAS. W. MORRIS and FRANK A. GARLOVE for appellants.

DAVIS, BOEHL, VISER & MARCUS and STANLEY B. MAYER for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On January 31, 1889, Andrew Biggs died testate; a resident of Jefferson county, Ky., having executed his will 19 days prior thereto on January 12, 1889. He left surviving him five children, one son and four daughters, neither of whom had children at the time of his death, but all of them later had children, except a daughter, who married a man by the name of Musselman, and who died childless and without grandchildren on May 19, 1936.

Following the death of the testator his will was duly probated in the Jefferson county court—it disposing of what appears to be a considerable amount of property. Its first clause appointed the Fidelity Trust & Safety Vault Company executor of the estate, and later it was also appointed trustee with certain powers not necessary to be enumerated, except the one here in controversy and to be later stated. The third clause directed the executor to pay out of the estate to each of testator's children $5,000, except his daughter Nannie W. Stallings he directed to be paid $7,500, and explained in his will that the reason why he increased her legacy $2,500 was because "that she has received from me that much less than they (the other children) have." The fourth clause enumerated the powers and authority of the trustee and made certain provisions, not material to the specific controversy here involved, but which do contain a fixed and unalterable purpose on the part of the testator to *equalize* the benefits to be derived from his property amongst the objects of his bounty— he giving express directions for his trustee to do so in several portions of the fourth clause of his will.

The 5th subsection of the fourth clause of his will is the exclusive parent of this litigation. It says: "The income of the trust estate as above provided shall be paid to my daughters and son, as above stated, during their lives, with remainder in fee to their issue surviving them, but if any of my daughters, or my son, shall die leaving no issue surviving her or him, the estate shall be held for the use of the survivors as aforesaid, with remainder to their descendants, and if all of my children shall die without issue surviving them, the

whole trust estate shall vest in fee in my brothers and sisters, or their descendants.''

One daughter, who married a man by the name of Tabler, died on September 25, 1908, leaving surviving her a son and a daughter. The son of the testator, William K. Biggs, died on September 23, 1929, leaving surviving him one son and two daughters. Following the deaths of those two, each of the other three of the children of the testator survived until the death of Mrs. Musselman on the date supra. Upon the death of Mrs. Tabler in 1908, the trustee, as well as all adult interested parties (and the record does not show whether any of her children were then infants) carried out their interpretation of the testator's will, as expressed in the above inserted subsection 5 of its fourth clause, by taking from or out of the corpus of the trust fund her one-fifth for life and paying it to the children of Mrs. Tabler—thus leaving the amount of the corpus of the trust only four-fifths of what it was at the time of the testator's death. The same process was repeated upon the death of William K. Biggs in 1929—his original one-fifth interest in the trust being then paid to his surviving children—which left of the original trust fund only three-fifths of its amount at the beginning. After such payments the other three surviving children of testator received their portion of the income from the reduced amount of the original trust estate, left in the hands of the trustee until the death of Mrs. Musselman in 1936, when this controversy arose over the question as to what disposition should be made of her one-fifth in and to the total amount of the original trust—which in the meantime had been reduced to one-third of the reduced three-fifths of the original trust estate left after paying such portions thereof to the surviving children of Mrs. Tabler, one of the testator's daughters, and to the surviving children of his son, William K. Biggs.

Upon the death of Mrs. Musselman, childless and without issue, a dispute arose between the surviving children of Mrs. Tabler and those of William K. Biggs on the one side, and the two surviving daughters of testator and their children (each of them having children), as to what should be done with the portion of the trust fund belonging to Mrs. Musselman for her life after her life interest therein was so terminated. The one side (surviving children of Mrs. Tabler and William K. Biggs) contended that each set of them was en-

titled to a per stirpes division of one-fifth of the portion of the trust estate to which Mrs. Musselman was entitled during her life, as the representatives of their respective deceased parent; whilst the two surviving children of the testator and their children contended that Mrs. Musselman's one-fifth interest under the terms of their ancestor's will should remain a part of the corpus of the trust, with the income payable to the two surviving daughters of the testator, and that, when the last surviving child of the testator died, then the descendants of that one would obtain all of the remaining trust fund—being that which had not been distributed to surviving children of deceased children of the testator. In making that contention they also insisted that when a child of the testator died before the termination of the trust, leaving children—to whom his or her portion of the trust was distributed according to the above interpretation—then all future interest in those children, receiving such distribution, in and to the trust estate at once ceased and became terminated for all purposes.

The inescapable consequence of that interpretation was and is to forever bar the right of grandchildren of the testator, whose parent had died during the existence of the trust—and to whom their parent's share had been so distributed—from any interest in the one-fifth portion of any child of the testator who might thereafter die leaving no issue, although such deceased child with surviving children became vested, *at the death of the testator*, with a contingent right to share his or her proportionate part of any child who died not leaving issue. Such diverse contentions were manifested by the pleadings in the cause, which is an action brought by the trustee against the surviving children of the testator—and against his grandchildren whose parents are dead—under our declaratory judgment statute, Civil Code of Practice, sec. 639a-1 et seq., for the purpose of obtaining a construction of testator's will in the respects indicated, and to direct it as to the course it should pursue in the handling of the one-fifth interest of testator's estate held by Mrs. Musselman during her life. Upon final submission the court construed the will as contended for by the surviving children of the testator, and their children, i. e., that upon the death of Mrs. Musselman her portion of the trust estate remained therein as a part of it, and that the income from the reduced corpus should thereafter be paid to such sur-

viving children of the testator until their death, but at the death of one of them leaving children, then her portion of the reduced trust estate should be paid to such surviving children, which portion would be, according to the interpretation made by the parties, one-fifth of the original trust fund (or, possibly, one-fifth of the increase of the remnant thereof to the extent of Mrs. Musselman's interest), and that, upon the death of the last surviving child of the testator leaving issue, the latter would then take the remaining portion of the trust. But if such last survivor died without issue, then the reduced amount of the original trust would go to the brothers and sisters of the testator, or to the descendants of any who might be dead—notwithstanding there might be grandchildren of the testator yet living whose parents had predeceased the last surviving child of the testator, and who had received their portion of the trust estate in the manner hereinbefore described. From that judgment the children of Mrs. Tabler, and those of William K. Biggs, prosecute this appeal.

In the course of our opinion determining the controversy, we will refrain from taking up space with citation of authorities on fundamental propositions universally accepted and disputed by no one. Heading that list of universally approved rules is the one that the intention of the testator, as gathered from the four corners of his will, is the one to be declared, adopted, and enforced by the court. All other rules are subsidiary to that one, and have only assisting effect in accomplishing that supreme purpose; or in reaching that conclusion, i. e., What was the intention of the testator as gathered from all the language he employed throughout his will. Among them, and perhaps the most forceful one standing next to the frontal one (of ascertaining and administering the intention of the testator), is the one that courts favor and will administer *equality* among descendent beneficiaries of a will, unless its language clearly indicates to the contrary; and which is to say, that where the language of the testator is ambiguous and uncertain, calling for two possible interpretations—the one resulting in equality and the other resulting in inequality—the former will be adopted to the exclusion of the latter. 69 C. J. 102, sec. 1151; Cornwall v. Hill, 135 Ky. 641, 117 S. W. 311; Brierly's Ex'r v. Nelson, 228 Ky. 116, 14 S. W. (2d) 201; Bourne v. Johns, 233 Ky. 448, 26 S. W. (2d) 13; Shackelford v.

Kauffman, 263 Ky. 676, 93 S. W. (2d) 15, and cases and authorities cited in those opinions. The text in Corpus Juris, in stating the rule (supported by many cases cited in the notes) says: "It will not be presumed that the testator intended to discriminate between the natural objects of his bounty, and a construction effecting equality between the natural objects of the testator's bounty will be favored." Also, "A construction leading to equality of distribution as between the testator's children will be preferred." Among the domestic cases cited in support of that statement are the Cornwall Case, supra, and Deppen's Trustee v. Deppen, 132 Ky. 755, 117 S. W. 352.

If the contested language and meaning of subsection 5 of the fourth clause of the instant testator's will is not ambiguous, we will acknowledge that our understanding of what it takes to constitute ambiguity occupies a very low level, and that our opportunities for recognizing ambiguity, and of acquiring a knowledge of what it takes to constitute it, has been woefully neglected. Of course, the storm center of the entire controversy is to be found in what the testator says shall be done with reference to the share of one of his children, in and to the trust he created, if he or she should die *without* issue. Abstractly, and disconnected from all other portions of his will, he has this to say with reference thereto: "The estate shall be held for the use of the survivors as aforesaid with remainder to their descendants." It is our conclusion that most probably the testator did not contemplate—and most likely did not purpose or intend—that the portion held by each of his children for and during their lives should be paid to their surviving children upon their death until the last surviving child died. The language employed by testator in his will furnishes some support for that supposed intention and purpose on his part—probably as much so as the one placed upon it by the trustee and surviving children as to the course to be pursued upon the death of one of them leaving children, and which latter interpretation was the one that has been followed, as we have seen, from the beginning of the trust. If our indicated intention of the testator is the correct one, then the ambiguity that confronts the parties, and which confronted the trial court, will become largely dispelled if not entirely removed, since under it the language last quoted (i. e., "the estate shall be held for

the use of the survivors as aforesaid, with remainder to their descendants'') would be interpreted as forbidding immediate distribution of the share of a deceased child leaving no issue, but requiring it to remain in the trust until the death of the last survivor—the income in the meantime being paid to each surviving child according to its proportionate part, and to the children of the deceased children their parent's part.

However, since no one to the controversy (including the trustee and all of the individuals, who appear to be adults) contends for such interpretation—and have heretofore followed their own interpretation as above indicated—we will not now adopt an interpretation that would confuse, disturb, and destroy the one heretofore followed. After all, there is but little, if any, difference between the eventual beneficial consequences of the two interpretations. The one so consented to and heretofore followed, by which the children of a deceased child received their parent's part of the corpus upon his or her death out of the original trust fund, had no further effect upon beneficial results than to make the ones to whom such portion was paid their own trustee thereafter, by turning over their deceased parent's portion of the trust fund to be managed and controlled by them instead of by the trustee; whereas the other interpretation, of holding the entire corpus of the trust together until the death of the last child, made the *trustee* the manager of that portion, for the purpose of producing income, instead of turning it over to its eventual owner for the same purpose.

In this case we have not only the presumed intention of the testator to equally distribute his estate among the objects of his bounty, in the manner and through the machinery he erected for that purpose, but we furthermore have most positive *express* language that he intended equality all along the line. To begin with, we find that he gave to his daughter Nannie W. Stallings, as above pointed out, $2,500 more than he did to any of the rest of his children, in order (as he said) to make her equal with those to whom larger amounts had been given. He provided also that the trustee should pay to his son, William K. Biggs, ''if he shall be of his present business habits'' when he arrived at 27 years of age, the sum of $5,000; but he distinctly said that ''it shall be considered in making the division herein provided for.'' Again, in subdivision 4 of the fourth clause

of his will (just preceding the one forming the storm center of this controversy) he provided that "The said trustee shall have discretion and power is hereby given to it, if any of my children shall be in need at any time, to pay to them or use for them part or parts of the principal of the trust estate, *keeping in view equality between my children.*" (Our italics.) So that, his entire will is filled with the warp and woof of an intention to create equality.

But, it is contended that the "equality" about which he was so solicitous applied only to *his children* and did not embrace his grandchildren, notwithstanding the rule as to equality supra makes no distinction, since the presumption favoring equality is made applicable to all generations embraced by the word "issue" or "descendant." However, we interpret the instant testator's will as manifesting the desire for "equality" amongst all the beneficiaries named in his will, be they children or grandchildren or brothers or sisters. The desire for equality permeates his entire will, and which he intended to apply to every possible class of beneficiaries named in it, as becoming eventual takers upon the contingencies named therein.

Both presumed and expressed equality is utterly ignored and totally destroyed by the interpretation embodied in the judgment of the learned chancellor, and from which this appeal is prosecuted, and which he recognized in his opinion but concluded that it was nevertheless the expressed intention of the testator. An illustration, which we will proceed to give, will serve to emphasize such inequality. For convenience in making the illustration we will designate the children of testator as A, B, C, D, and E. A dies and leaves children to whom his part of the trust is paid and delivered upon his death. B, C, and D all die without issue. According to the judgment their one-fifth each would remain in the trust and the surviving children of the testator get the income therefrom in their proportionate parts during their lives until the death of the last survivor, E, who died leaving children. Under the interpretation contained in the judgment appealed from, the children of the last survivor (E) would then take four-fifths of the testator's estate, whilst the surviving children of A would receive only one-fifth thereof. Carrying the illustration a step farther—suppose that B, C, D, and E should all die without leaving issue, then under the

judgment, as rendered, the children of A, the first one to die, would have no claim whatever to any of that four-fifths of the testator's estate, but all of it would go to his brothers and sisters, since all interest of the children of A, in their grandfather's estate, was terminated upon the death of their parent and the receipt by them of their parent's share. Surely it cannot be contemplated that the testator meant any such unequal and unnatural consequences. On the contrary, it is our inescapable conclusion—fortified by the rules supra—that Andrew Biggs, the testator, intended when he made his will to provide for eventual "equality" in the distribution of his estate, although it might be distributed upon the occasions of eventualities happening before the final termination of the trust, but which, if done, should not affect "equality" and which conclusion is bottomed on the grounds and reasons hereinbefore pointed out.

It, therefore, appears that the learned chancellor erred in his interpretation of the testator's will, and that the proper judgment should be for the one-fifth share of Mrs. Musselman to be divided into four parts, and one part paid to the children of Mrs. Tabler, and another to the children of William K. Biggs, with the other two parts remaining in the trust to abide the eventualities that may ultimately happen, and to be finally disposed of according to the interpretation herein approved.

Wherefore, for the reasons stated, the judgment is reversed, with directions to set it aside, and to render one as herein directed, and for other orders not inconsistent with this opinion; the whole court sitting.