# Robinson et al. v. Von Spreckelsen et al.

Oct. 7, 1941.

706

McKnight & Shuff for appellants.

Fred Lisanby and James E. Babcock for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Affirming.

When the late C. V. Robinson made his holographic will on February 25, 1929, his family consisted of his wife, Mrs. Elizabeth Robinson, a son, G. W. Robinson, and two daughters, Mrs. Iva Karsner and Mrs. Mary Alta Karsner. His will is as follows:

"Feb. 25, 1929

"This day in my own hand I will my property as follows I want my Life Insurance of One Thousand Dollars eaqeal divided with my wife Elizabeth Robinson, Iva Karsner G. W. Robinson & Mary Alta Karsner My personal property I want Debts paid & a chep marker erected at my Grave & Mryan & Minnie Grave then I want my wife Elizabeth Robinson to have one half & the Remainder to be Divided Eaqual between Iva Karsner, G. W. Robinson My House Hold Goods go to my wife Elizabeth Robinson to Do as she pleases with if she had any thing Left at her Deth to go to Iva Karsner & G. W. Robinson & Mary Alta Karsner I want Mary Alta Karsner money Put in Trust for her for her Education or until She Becomes of age But Estil Karsner not to Handle a Peny of it If I havent Done it I want G. W. Robinson to put seventy Dollar marker to Mr. George Wood & Matilda Grave.

"(signed) C. V. Robinson."

Testator died in 1930. His personal estate consisted of $1,000 life insurance proceeds and about $1,900 in other property. He owned two parcels of real estate at Stamping Ground. His daughter, Mrs. Mary Alta Karsner had pre-deceased him, leaving surviving a daughter, Mrs. Alta Von Spreckelsen. , The question before the

court is whether the testator disposed of his real estate. If he did it was in the latter part of this portion of the will:

> "My personal property I want Debts paid & a chep marker erected at my Grave & Mryan & Minnie Grave then I want my wife Elizabeth Robinson to have one half & the Remainder to be Divided Eaqual between Iva Karsner, G. W. Robinson."

If this included testator's real estate, then his daughter, Mary Karsner, was left out. The circuit court held that this provision was limited to the disposition of personal property other than the proceeds of the insurance and, therefore, that he died intestate as to his real estate. This gave the granddaughter (daughter of Mary Karsner) a one-third interest in remainder.

Appellants argue that the clause "as follows" in the beginning of the will relates to the manner of disposition. This would make the disposing part of the instrument read: "I will as follows my property." Since there is no punctuation or break in the language of the instrument, the appellants submit that the residue of the estate, which would be the realty and the rest of the personalty (being all except insurance proceeds and household goods), is disposed of by the phrase "then I want my wife Elizabeth Robinson to have one half and the remainder to be divided eaqual between Iva Karsner, G. W. Robinson." To fortify the argument, the appellants invoke the rule for construing doubtful provisions of a will that an interpretation is to be adopted if possible which avoids partial intestacy, since when a will is executed the reasonable and natural presumption is that the testator intends to dispose of his entire estate. Trusty v. Trusty, Ky., 59 S. W. 1094; Shaver v. Weddington, 247 Ky. 248, 56 S. W. (2d) 980; Goode v. Bonta, 267 Ky. 739, 103 S. W. (2d) 266; Davis v. Bennett's Executrix, 272 Ky. 674, 114 S. W. (2d) 1150. When the testator apparently made no attempt to dispose of any particular class of property or of any kind of title, the presumption upon which the rule rests is not so strong as it is when it seems that his undertaking was to embrace the particular class or where the subject of the gift is the residuary estate or a remainder interest following a life estate. Trusty v. Trusty, supra; Shields v. Shields, 185 Ky. 249, 214 S. W. 907; Thomas v. Thomas, 220 Ky. 101, 294 S. W. 776; Shaver

v. Weddington, supra. But the rule cannot be applied at all in order to supply a disposition when none was apparently intended, for the presumption against intestacy will not prevail when the language of the will fairly construed is insufficient to carry the entire estate.

Associated with the presumption against partial intestacy is the presumption that testator meant to treat his children or other natural objects of his bounty equally, and to have the property go in the legal channel of descent, the law favoring that construction of a will which conforms most nearly to the general law of inheritance. If it is uncertain and doubtful whether the testator intended to devise his real estate, the title of the heir must prevail.

Sometimes, as it is in the instant case, these two rules appear on opposite sides of the argument for interpretation. To construe the will as appellants ask would be to deprive the testator's youngest child of any share in her father's real estate. That result is to be avoided unless the language of the will clearly requires. Quigley v. Quigley, 3 Ky. Op. 376; McIlvaine v. Robson, 161 Ky. 616, 171 S. W. 413; Hodge v. Lovell's Trustee, 262 Ky. 509, 90 S. W. (2d) 683.

All rules of construction are but instrumentalities to be used if needed in the process of ascertaining the intention of the testator as gathered from the words of the will itself. None can be used to write something into the will which the testator did not himself put in it. Shields v. Shields, 185 Ky. 249, 214 S. W. 907. However, in the process of determining his intention the fact that the man who has written his own will was unlettered or ignorant must be considered "in the judicial interpretation of his pervading intent." Delph v. Delph, 2 Bush 171, 65 Ky. 171. The courts will also consider the conditions which surrounded the testator when he executed his will and from them undertake to deduce some motive which actuated him in expressing himself as he did; but neither of these considerations can import into the will an intention to do something he did not do or to make disposition he did not in fact make. Bush's Ex'r v. Mackoy, 267 Ky. 614, 103 S. W. (2d) 95.

There is nothing in the record or the will before us that indicates any purpose to deprive the daughter Mary of her share in what was the major part of the estate.

She was made equal with her sister, brother and mother in the division of the insurance proceeds, and in the distribution of the household goods not disposed of by her mother. The will discloses that Mary, though married, was not of legal age. Her father directed that her part of the "money" should be placed in trust free from the control of her husband. Perhaps he knew that her legal disability would itself tie up her interest in the real estate. She was excluded only from the division of the personal property other than the insurance, after debts were paid and monuments erected. Doubtless that was little. The testator may have regarded his insurance as being something different from personal property. Testator declared that by his own hand "I will my property as follows," and then enumerated what property he was disposing of. Nowhere is there any reference to real estate.

In short, as the chancellor stated in his opinion, the duty of the courts is to ascertain what the testator meant by what he said and not undertake to declare what the testator might have said or intended to say; and in seeking his expressed intention the language of the will must be given the ordinary or generally accepted meaning. Doing this we concur in the ruling of the circuit court. Howard v. Cole, 124 Ky. 812, 816, 100 S. W. 225; Walton v. Jones, 216 Ky. 289, 287 S. W. 710; Spradlin v. Wiman, 272 Ky. 724, 114 S. W. (2d) 1111.

The judgment is affirmed.