Ether K. COMBS, Committee for Isaac
Newton Combs, Jr., Appellant,

v.

FIRST SECURITY NATIONAL BANK AND
TRUST COMPANY, Trustee,
etc., Appellees.

Elizabeth M. BROWN et al., Appellants,

v.

FIRST SECURITY NATIONAL BANK AND
TRUST COMPANY, Trustee,
etc., Appellees.

Louise COMBS, Appellant,

v.

FIRST SECURITY NATIONAL BANK AND
TRUST COMPANY, Trustee,
etc., Appellees.

Court of Appeals of Kentucky.

May 31, 1968.

Rehearings Denied Oct. 11, 1968.

S. Tilford Payne, Jr., Payne & Davis, Louisville, for appellant Ether K. Combs, Committee for I. Newton Combs.

John L. Davis, Stoll, Keenon & Park, Lexington, for appellant Elizabeth M. Brown et al.

Stanley M. Saunier, Jr., Gess, Mattingly, Saunier & Atchison, Lexington, for appellant Louise Combs.

Nathan Elliott, Jr., Harbison, Kessinger, Lisle & Bush, Lexington, McDonald, Alford & Roszell, Lexington, for appellees.

CULLEN, Commissioner.

In an action to construe the will of Thomas A. Combs, deceased, judgment was entered which was unfavorable to the claim of Louise Combs, widow and devisee of a deceased brother of the testator, and to a claim of I. Newton Combs, Jr., a son of another deceased brother, and to claims of Elizabeth M. Brown, Nancy B. Brown, Robert H. VanMeter, Jr., and James C. VanMeter, grandchildren of still another deceased brother. The judgment was favorable to the devisee under the will of the testator's daughter, which devisee is a brother of I. Newton Combs, Jr. We have appeals by all those whose claims received unfavorable disposition.

Thomas A. Combs executed his will in 1927 and died in 1935. In his will he left the major portion of his estate (which now amounts to over a million dollars) in trust for his wife and daughter during their lives. Then came this provision:

"Upon the death of my wife, if she should outlive my daughter, or, upon the death of my daughter, if she should outlive my wife, I give, devise and bequeath the corpus of said trust fund to the issue of my daughter, per stirpes, if she should leave issue. If, however, my daughter should leave no issue and survive my wife, then I give to her (my daughter)

the right to dispose of one-third (⅓) of the corpus of her trust estate by will, and I give, devise and bequeath the remaining two-thirds of said trust fund to my four brothers, viz., I. Newton Combs, S. Sewell Combs, Bill Combs, and James H. Combs, and the issue of such of them as may be dead, leaving issue, such issue to take, per stirpes, the share their father would have taken if living."

The daughter survived the widow and ultimately died in 1966, without issue. By will she undertook to devise her entire estate, including anything she had the power to devise under her father's will, to William A. Combs (brother of I. Newton Combs, Jr., and son of I. Newton Combs).

The problems arise from these facts: Bill Combs predeceased the testator, unmarried, without issue, and intestate. The other three brothers all died before the death of the life tenant daughter. Sewell died without issue, but married, and he left his estate by will to his widow, the appellant Louise Combs. I. Newton Combs left two sons as issue, being the appellant I. Newton Combs, Jr., and his brother William (who is in effect an appellee). James H. Combs left as issue four grandchildren who are the appellants Elizabeth M. Brown, Nancy B. Brown, Robert H. VanMeter, Jr., and James C. VanMeter.

The dispute is as to the disposition of the two-thirds of the trust estate devised to the four brothers "and the issue of such of them as may be dead." Everyone agrees that the children of Newton will share at least one-fourth of the two-thirds, as will the grandchildren of James. The question is, who gets the rest?

The executor under the daughter's will (who speaks on behalf of William as devisee of that will) maintains that under the disputed clause of Thomas' will neither a tenancy in common nor a class was created, wherefore Bill's share became intestate property because he died before Thomas, and Sewell's share become intestate property because he died, without issue, before the death of the life tenant. Therefore

those two shares descended to the daughter of Thomas and passed under her will to William. This is the construction that the trial court accepted.

Louis Combs (the widow and devisee of Sewell) argues that the will created a tenancy in common among the four brothers, wherefore upon Bill's death his share passed to the other three brothers; that there was no implied condition that the brothers survive the life tenant, so each of the three brothers had a vested interest subject only to being divested by death of Thomas' daughter leaving issue, which interest could be transferred by will; and since Thomas' daughter did not leave issue there was no divesting. Under this argument Louise as devisee of Sewell would receive one-third of the two-thirds in dispute.

I. Newton Combs, Jr., and the four grandchildren of James agree on their contention, which is that the gift was to the four brothers (or to the issue of any of them) as a *class*; that only those members of the class who survived the life tenant would take; that the survivors were I. Newton Combs, Jr., and William as one unit, and the four grandchildren of James as the other unit, and each of these units takes half of the property devised to the class.

We approach consideration of this case accepting as our basic guide the proposition that we are to seek the testator's intent from the language of the will. As said in American Christian Mission Society v. Tate, 198 Ky. 621, 250 S.W. 483 at page 484:

"* * * If we but let the will speak for itself, instead of attempting to construe its plain, unambiguous terms according to a set of abstruse and arbitrary rules, there is not a chance to make a mistake; but if we apply said rules we are led far afield. The modern tendency of courts everywhere is to disregard, when it can be done, all technical rules of construction anciently employed in the interpretation of deeds and wills, and measure the document by plain com-

mon sense, giving it such meaning as its maker, a rational being, is bound to have intended by the words employed."

We think it is perfectly plain that had the testator simply devised the remainder of his estate to the four brothers (naming them as he did), without making provision for the issue of any who be dead leaving issue, his intent would have been to give each brother an interest transferable by will or by descent, without necessity of survival of the life tenant. See Saulsberry v. Second National Bank of Ashland, Ky., 400 S.W.2d 506. (This intent would have been incapable of accomplishment as to Bill, who predeceased the testator, and under KRS 394.500 Bill's share would have passed as intestate property.) However, the testator's insertion of the provision for issue of a deceased brother places an entirely different light upon his intent.

Clearly, the language of the will, in providing for "the issue of such of them as may be dead," has reference to death of a brother *before* the death of the life tenant. This is its plain meaning. Therefore, we undertake to determine what the testator could have intended by so limiting the gift to the issue. If the testator had thought that upon the death of a brother, with issue, before the death of the life tenant, such brother's share could pass by will or inheritance just the same as if he were to die *after* the life tenant, and thus the issue could be cut off by will or their shares reduced by the extent of a widow's share, and he desired that the issue be preferred, surely he would have made the limitation effective whenever the brother's death occurred, whether before or after that of the life tenant. It is not reasonable to believe that the testator would have intended that a brother dying *without* issue could will his share to whom he pleased, whether his death occurred before or after that of the life tenant, but that a brother dying *with* issue could will his share only if he died *after* the life tenant. So he must have had some other thought or intention in mind when he made the limitation effective only

upon a brother's predeceasing the life tenant. It seems that he must have thought that if he did not make such a limitation the share of a deceased brother, dying with issue before the death of the life tenant, would pass to the *other brothers* who survived. In substance, he thought that only brothers and issue were possible takers, and he simply wanted to make clear that issue took preference over a brother-uncle.

The provision for issue shows that the testator wanted to maintain family ownership of his property (most of which at the time of his death consisted of stock in a lumber business operated by the five brothers) extending to the taking at the death of his daughter. After that point he did not undertake to control disposition, but up to and including that point he intended that the property stay in the blood relationship.

■ We conclude that by reason of the making of the provision for issue the testator's intent was that the two-thirds of his estate covered by the clause in dispute should go, at his daughter's death without issue, to such of his brothers, or their issue per stirpes, *as survived the life tenant.* Thus, in substance, he in effect created a *class.* Accordingly, by virtue of the provision of KRS 394.410, no intestacy resulted by reason of Bill's death before that of the testator, and since under the will the gift to the class was postponed until the death of the life tenant, there was no intestacy by reason of the death of Sewell before that of the life tenant. See Parke v. Parke's Ex'r, 295 Ky. 634, 175 S.W.2d 141; Ford v. Jones, 223 Ky. 327, 3 S.W.2d 781; Gatto v. Gatto, 198 Ky. 569, 250 S.W. 833.

As the sole surviving members of the class at the time of the death of the life tenant, the children of Newton and the grandchildren of James were entitled to all of the two-thirds legacy (per stirpes).

Our view of the case makes it unnecessary for us to consider the various presumptions, such as the one that by *naming* of the beneficiaries a gift to individuals rather than to a class is intended, see

Struss v. Fidelity & Columbia Trust Company, 182 Ky. 106, 206 S.W. 177; Carroll v. Carroll's Ex'r, 248 Ky. 386, 58 S.W.2d 670; Gullett v. Gullett's Adm'r, Ky., 275 S.W.2d 945; Church v. Gibson, Ky., 286 S.W.2d 91; or the one against partial intestacy, see Citizens Fidelity Bank & Trust Company v. Schellberg, Ky., 238 S.W.2d 142.

The net effect of our decision is that Louise Combs takes nothing; I. Newton Combs, Jr., takes one-sixth of the estate (one-half of one-half of two-thirds); William A. Combs takes one-half of the estate (one-half of one-half of two-thirds, plus one-third devised by the testator's daughter); and Elizabeth M. Brown, Nancy B. Brown, Robert H. VanMeter, Jr. and James C. VanMeter each take one-twelfth (one-quarter of one-half of two-thirds).

On the appeal of Louise Combs the judgment is affirmed. On the other appeals the judgment is reversed with directions to enter judgment in conformity with this opinion.

All concur.