John H. CLARKE, Trustee, John H. Clarke, Individually, James N. Kirk, Ann Kirk Burnette, Minkie Clarke Denham, Mary Clarke Legg, James L. Clarke, J. Kirk Clarke, Thomas R. Clarke, Robert A. Clarke, Elijah T. Kirk, Glenna B. Fossitt, Ann B. Shortt, John Denham, Cyndi D. Gardner, Hayden L. Hill, Milton F. Legg III, John D. Legg and Mary L. Moore, Appellants,

v.

John W. KIRK, Jr., Charles L. Kirk and Elizabeth Rees Kirk Hiles, Appellees.

No. 89–SC–524–DG.

Supreme Court of Kentucky.

Sept. 6, 1990.

Woodson T. Wood, Fox, Wood & Wood, Maysville, for appellants.

Carolyn S. Bratt, Lexington and Robert G. Zweigart, Zweigart, Royse, Zweigart and Kirk, Maysville, for appellees.

LAMBERT, Justice.

This Court granted discretionary review of the opinion of the Court of Appeals in an action for declaration of rights under the will of James Rees Kirk. At issue before this Court is the construction of a trust provision in the decedent's will.

James Rees Kirk died testate in 1973. His will, which was executed in 1956, together with codicils executed in 1963 and 1969, was duly probated. The codicils to

the testator's will are not before us for construction.

We are called upon to construe a trust provision which appears in the testator's will. In general, this provision provides for a life income for the testator's seven nieces and nephews with remainder interests in fee simple to their issue. The provision before the Court is as follows:

"*NINTH:* I give, devise and bequeath all of the rest, residue and remainder of my estate, both real and personal of every kind and nature, wheresoever situated, including all lapsed and failed legacies and devises, hereafter termed the 'Trust Estate', to John H. Clarke, Jr., in trust, without bond, for the uses, purposes and beneficiaries, with the powers and subject to the conditions following:

. . . . .

(e) Upon the death of my wife, ESTHER B. KIRK, the Trustee shall apply and distribute the net income of the trust estate as follows:

. . . . .

(2) The remainder of net income, after payment to my sister as aforesaid if she survives my wife, shall be paid in equal shares to my seven nephews and nieces for and during their natural lives: Mrs. Minerva S. Byrnes of La Jolla, Cal., James N. Kirk, John W. Kirk, John H. Clarke, Jr., Anne K. Burnette, Minkie C. Denham, all of Maysville, Ky., and Mary C. Legg of Henderson, N.C.

(f) Upon the death of any one of my said seven nieces and nephews the Trustee shall immediately determine the value of the proportionate share of the trust estate on the then current market that said deceased nephew or niece was entitled to the income therefrom for life, and as soon as practicable thereafter, the Trustee shall make distribution to the child or children (issue or adopted) of such nephew or niece, in equal shares of such part of the trust estate so determined and as to that nephew or niece and their heirs this trust shall be terminated. If a child or children have predeceased the parent designated herein as nephew

or niece beneficiary, leaving surviving issue, such issue shall receive the parent's share equally per stirpes. In the event that any of my said nephews or nieces should die without children or grandchildren then the share of such nephew or niece as life tenant shall lapse and shall accrue to the benefit of the survivors of said group of nieces and nephews and eventually their children or grandchildren.

. . ."

In 1967, five years prior to the testator's death, one his nephews, John W. Kirk, died and left surviving him three children, appellees herein. Seasonably after the testator's death and without dispute, the trustee paid to appellees that portion of the testator's estate upon which John W. Kirk would have been entitled to receive the income. Thereafter, the six surviving nieces and nephews named in the will received income from the trust estate according to the terms of the instrument.

In 1987, one of the testator's nieces, Minerva S. Byrnes, died without issue. Thereafter, appellees brought this action for declaration of rights seeking an adjudication that they were entitled to share in the corpus of the trust upon which the life income of Minerva S. Byrnes had been based.

The trial court denied appellees' claim and held that the portion of the corpus upon which the life income had been based should remain in trust for benefit of the surviving nieces and nephews and as each of them died, a proportionate share of the whole should be distributed to their issue. The trial court said:

". . . the share of the testamentary trust of James Rees Kirk on which Minerva S. Byrnes was entitled to income during her life shall remain in said trust and enure to the benefit of the five remaining beneficiaries and upon their respective deaths to their issue."

The effect of this ruling was to exclude appellees, solely by reason of their father's death prior to the death of Minerva S. Byrnes, from sharing in that portion of the

trust estate upon which the life income of Minerva S. Byrnes had been based.

Appellees appealed to the Court of Appeals. A divided panel of that Court reversed the trial court. The majority characterized the interests held by appellees as twofold, a defeasible fee in that portion of the decedent's estate upon which their father would have received a life income, and a contingent interest in that portion of the trust upon which a niece or nephew who died without issue had received a life income. Said otherwise, the Court of Appeals viewed appellees as having a vested interest in that portion of the trust estate upon which their father would have received the income, and a contingent interest in that portion of the trust estate upon which one or more of the life income beneficiaries received income in the event such beneficiary died without issue.

Appellants contend that the language of the instrument is clear and needs no construction. They point to the first and third sentences in paragraph 9(f) and conclude that the testator intended that as each of the nieces and nephews died, distribution of the appropriate portion of the trust should be made to his or her children or grandchildren thereby terminating the interest of said child or grandchild in the trust. Moreover, they contend that the third sentence of paragraph 9(f) applies precisely to what actually occurred and that only those persons who are "survivors of said group of nieces and nephews" are entitled to share in the Minerva S. Byrnes portion of the trust. They conclude that inasmuch as John W. Kirk did not survive Minerva S. Byrnes, his children do not fall within the designated class.

Appellees present a more complex argument. They contend that under the will they have multiple interests in the trust estate. In their view, they acquired a defeasible fee interest in their father's portion of the trust estate and contingent interests in other portions of the trust estate in the event a niece or nephew died without issue. For support of this argument they point to the language of the instrument as well as various rules of interpretation and construction which will be addressed herein.

A virtually endless catalog of rules is available for use by courts faced with the task of interpreting or construing a decedent's will. Most of such rules are easily stated and imminently logical, but extremely difficult to apply to a particular case. See generally 2 J. Merritt, *Kentucky Practice*, Chapters 30 & 31 (1984).

■ In an effort to achieve a proper result in this case, we go first to the most basic of all such rules, the so-called "polar star rule." This rule holds that in the absence of some illegality, the intention of the testator is controlling. *Scheinman v. Marx*, Ky., 437 S.W.2d 504 (1969), and *Combs v. First Security National Bank and Trust Co.*, Ky., 431 S.W.2d 719 (1968). For additional authority, see 22 *Kentucky Digest*, "Wills," § 439 (1985). To ascertain the testator's intention, it is necessary to first examine the language of the instrument. If the language used is a reasonably clear expression of intent, then the inquiry need go no further. *Gatewood v. Pickett*, 314 Ky. 125, 234 S.W.2d 489 (1950). If it is not such a clear expression, then it is necessary to construe the language used according to appropriate rules of construction.

■ Accordingly, before we proceed further, we will review the language both parties agree is controlling to determine whether the instrument needs further construction.

The first sentence of paragraph 9(f) says: "Upon the death of any one of my said seven nieces and nephews the Trustee shall immediately determine the value of the proportionate share of the trust estate on the then current market that said deceased nephew or niece was entitled to the income therefrom for life, and as soon as practicable thereafter, the Trustee shall make distribution to the child or children (issue or adopted) of such nephew or niece, in equal shares of such part of the trust estate so determined and as to that nephew or niece and their heirs this trust shall be terminated."

The only disagreement between the parties as to the meaning of this language concerns the provision which says "as to that nephew and niece and their heirs this trust shall be terminated." Our review of this language immediately raises the question of whether the testator intended to terminate the entire trust as to appellees or intended to terminate only that portion of the trust which related to the interest of their father, John W. Kirk. At one point, the testator uses the term "trust estate" and at another point uses only "trust." The word "trust" generally refers to a fiduciary relationship while "trust estate" generally refers to the property controlled by the fiduciary. *Black's Law Dictionary* 1352–1357 (5th ed. 1979). It would not be unreasonable to conclude that the decedent used this language in an effort to indicate that upon the death of any one of his nieces and nephews, the fiduciary relationship would be terminated as to that portion of the trust property. Under such an interpretation, the ultimate beneficiaries of the Minerva S. Byrnes portion of the trust estate would be unaffected.

Moreover, there is a legitimate question as to whether the direct interest of the issue of the nieces and nephews was ever subject to a trust. From the language used, it is clear that these persons had a vested interest which could be defeated only by their death prior to the death of the parent.

Accordingly, we are unable to conclude that the language in the first sentence of paragraph 9(f) is dispositive of the controversy.

Next we turn to the third sentence of paragraph 9(f). The language of this provision is as follows:

"In the event that any of my said nieces and nephews should die without children or grandchildren then the share of such nephew or niece as life tenant shall lapse and shall accrue to the benefit of the survivors of said group of nieces and nephews and eventually their children or grandchildren."

From the foregoing we are immediately confronted with the question of what mean-ing should be assigned to the word "survivors." See *Harris v. Berry*, 70 Ky. (7 Bush) 113 (1870). Does this term refer to the remaining nieces and nephews or does it refer to their successors in interest? As the term is widely used, "survivors" as it appears herein could be construed in either of the manners identified above. The final phrase, "and eventually their children or grandchildren," is likewise nondispositive. If one construes the word "survivors" to refer to the successors in interest of the designated nieces and nephews, this phrase merely identifies the classes of persons who may be eligible to inherit from the testator.

Moreover, the language used demonstrates the testator's intention to give according to class. While the nieces and nephews are identified by name at the beginning of the provision, throughout the remainder of it, they are referred to only by class. Likewise, gifts are made to classes identified as children, grandchildren and issue. In *Brierly's Executor and Trustee v. Nelson*, 228 Ky. 116, 14 S.W.2d 201 (1929), a case remarkably similar to the case at bar, the Court was required to construe the phrase "if any of them die without lawful issue, then to the survivors and their issue." Identifying the legal issue as "what is meant by 'survivors and their issue,'" the Court held that "survivors" included all surviving beneficiaries and that the term "and their issue" was inadvertently used instead of "or their issue." The Court quoted with approval from *Harris v. Berry, supra,* as follows:

"'Survivor,' as written, is a flexible term, not necessarily meaning the testator's surviving children only; but, when molded by the context and spirit of the will, may consistently with the literal import comprehend all his surviving descendents who were intended to be beneficiaries."

The Court then concluded that the context and spirit of the instrument required that a liberal and comprehensive meaning be assigned to the phrase "survivors and their issue."

Paragraph 9(f) is made more difficult of reasonable construction by the imprecise use of language. In one instance the testator directs the trustee to make distribution to the "child or children (issue or adopted) of such niece or nephew." Clearly the testator intended to refer to biological or adopted children, but used instead "issue," a technical legal term which means one's lineal descendents. See *Black's Law Dictionary* 745 (5th ed.1979). In another instance the testator used the term "lapse" in a totally improper fashion. Moreover, this paragraph alternates between the use of technical legal terminology and ordinary language. In some instances the testator refers to "child," "children," or "grandchildren" and in others he uses the term "issue."

As indicated in the foregoing discussion, this Court is unable to ascertain the testator's intention upon the issue presented. Accordingly, we find it necessary to apply certain rules of construction found in the decisions of this Court.

■ In the absence of a clear intention to make an unequal distribution, this Court presumes that a testator intends to treat beneficiaries of the same class equally. We have held that the law favors construction of a will which conforms most nearly to the general law of inheritance. *Robinson v. Von Spreckelsen*, 287 Ky. 705, 155 S.W.2d 30 (1941). The presumption in favor of equality has been held to be one of the most forceful of all presumptions.

"Among them [rules of construction], and perhaps the most forceful one (of ascertaining and administering the intention of the testator), is the one that courts favor and will administer *equality* among descendent beneficiaries of a will, unless its language clearly indicates to the contrary; and which is to say, that where the language of the testator is ambiguous and uncertain, calling for two possible interpretations—the one resulting in equality and the other resulting in inequality—the former will be adopted to the exclusion of the latter." *Biggs v. Fidelity & Columbia Trust Co.*, 273 Ky. 54, 115 S.W.2d 298, 300 (1938).

Application of such a presumption admits the court's inability to say with certainty what the decedent intended, but reflects the view that if an error is to be made, it should be made on the side of equality.

Throughout paragraph 9(f) the concept of equality among the testator's nieces and nephews and their issue is pervasive. First, equal shares of the income from the trust were given to the nieces and nephews. Second, upon the death of a niece or nephew, a "proportionate share" or "equal share" of the trust estate was given to the child or children of the deceased niece or nephew. Third, a provision was placed in the instrument providing for division of the parent's share "equally per stirpes" in the event the child or children of the designated niece or nephew died before the parent. Finally, in the event of the death of a niece or nephew without issue, that portion was given for benefit of all members of the class.

■ Moreover and apart from the doubtful and uncertain language which has been heretofore discussed, nothing in the testator's will and in particular paragraph 9(f) manifests an intention to treat the issue of the testator's nieces and nephews in an unequal manner. There is no indication that the testator wanted the shares of any of his grandnieces and grandnephews diminished by reason of their parents having predeceased those dying without issue. The intention of a testator to exclude those who would be naturally included within the class designated must be clear. 4 W. Bowe & D. Parker, *Page on the Law of Wills* § 35.6 at 505 (1961).

The suggestion that the testator intended an unequal treatment of appellees or any member of a designated class is nearly absurd. A testator may, for an infinite variety of reasons, wish to exclude or diminish the share of his estate given to a particular person within a class. A testator could not, however, rationally intend to treat certain members of a class disproportionately without any means of knowing what persons would comprise such a class. It is inconceivable that the testator could have intended to give appellees a diminish-

ed share of his estate based solely upon the fortuity of their father's untimely death. In the absence of a clear manifestation of such intent, this Court will not rely upon doubtful language to achieve such a result.

The opinion of the Court of Appeals is affirmed.

STEPHENS, C.J., and LEIBSON and WINTERSHEIMER, JJ., concur.

VANCE, J., dissents by separate opinion in which COMBS and GANT, JJ., join.

VANCE, Justice, dissenting.

The majority, in my opinion, has manufactured an ambiguity which does not exist in order to apply a rule of judicial construction which, in my opinion, does not apply, and has construed the last will of James Reese Kirk to mean something other than what it says.

Mr. Kirk left the contested portion of his estate in trust with the net income to be paid in equal shares to his seven nieces and nephews during the remainder of their natural lives. Upon the death of any one of the seven nieces and nephews, the trustee was directed to determine immediately the value of that portion of the trust estate from which the deceased niece or nephew was entitled to receive the income for life and to distribute it in equal shares to the children of that deceased nephew or niece, and as to that nephew or niece and heirs, the trust *"shall be terminated."*

This contest developed because one of the nephews died and a distribution was made to his heirs and the trust terminated as to them. Thereafter, another niece died childless, and a question arose as to whether her portion of the trust estate should go to the surviving nieces and nephews only, or to the surviving nieces and nephews and the heirs of the deceased nephew.

The majority finds an ambiguity in that the language used could mean that upon distribution to the heirs of a nephew or niece, the trust would terminate only as to the portion of the trust estate so distributed.

There was only one trust and one trust estate. The trust estate was designed to provide a lifetime income in equal parts to seven beneficiaries. As each of the seven died, the trust as to that beneficiary and his heirs was terminated by a complete distribution of his allocable portion of the trust estate. Once that distribution was made, the will clearly provides that the deceased nephew or niece, or their heirs, had no further interest in the trust. As to them it was *terminated.*

Next, the majority speculates about whether the term "survivors," as used in the will, meant the nieces and nephews who remained alive after any one of them died, or whether it meant the successors in interest so that it would include the heirs of one of the nieces and nephews whose interest in the trust had been earlier terminated by death. The will provided that if one of the nieces and nephews died without children or grandchildren, the share of such niece or nephew in the trust estate should accrue to the *beneficiaries of said group of nieces and nephews.* It seems reasonably clear to me that the language used refers only to those nieces and nephews who remained alive after the death of a niece or nephew who died childless.

Thus, to me, there is no ambiguity, but the majority, having found one, has proceeded to discover the testator's real intention by means of judicial construction. It applies the rule that in the absence of a clear intention to make an unequal distribution, the law presumes that a testator intends to treat beneficiaries of the same class equally.

The majority states that nothing in the will indicates any intention to treat any of the grandnephews and grandnieces unequally. In truth, however, there is such an indication.

The children of the first of the seven nieces or nephews to die were to receive the corpus of the estate immediately and would thus have the use of the principal rather than just the income from their portion of the trust estate long before the other grandnephews and grandnieces would have such a privilege. In addition, if

Mr. Kirk had really wanted to treat all of his grandnephews or grandnieces equally, he would not have made any distributions of the trust estate until all of the original seven nieces and nephews had died, and then he would have made a distribution in equal shares per capita to all of the grandnieces and grandnephews. Instead, they shared per stirpes, which of course means that they did not all receive equal treatment.

We cannot know what Mr. Kirk meant to say, but we know what he said, and the meaning of what he said is clear to me. I would not artificially construe it to mean something else.

COMBS and GANT, JJ., join in this dissenting opinion.