John WEBB; Tudell Webb; Bill Webb; and, Lena Webb, Appellants,

v.

James MAYNARD; Mary Ruth Maynard; and, Addington Enterprises, Appellees.

No. 1998–CA–002873–MR.

Court of Appeals of Kentucky.

Dec. 30, 1999.

Rehearing Denied Feb. 18, 2000.

Discretionary Review Denied by Supreme Court Dec. 13, 2000.

Miller Kent Carter, Pikeville, for Appellants.

Lawrence R. Webster, Pikeville, for Appellees.

Before: GUDGEL, Chief Judge; GARDNER and KNOX, Judges.

*OPINION*

KNOX, Judge:

In this will construction case, appellants appeal from a summary judgment entered by the Pike Circuit Court wherein appellee, Mary Ruth Maynard, sister of appellants John and Bill Webb, was adjudged the owner of an undivided one-tenth interest in certain real property devised by Condor Webb upon his death.

Condor Webb, the owner of five (5) tracts of land in Pike County, Kentucky, died testate in October 1990. Surviving him were his widow, Sadie, and their eleven (11) adult children, three (3) of whom are appellants, John and Bill Webb, and appellee, Mary Ruth Maynard. In 1993, Sadie sold and conveyed to sons John and Bill the interest she had acquired in her deceased husband's real property pursuant to his will. Shortly thereafter, John and Bill conveyed certain mining rights to appellee, Addington Enterprises, which had undertaken mining operations on the property.

Sadie Webb died in March 1995, eight (8) months after which Mary Ruth filed this action in Pike Circuit Court alleging that Sadie, her mother, had acquired only a lifetime interest in Condor's real property, not a fee simple which she had the power to convey to her sons. As a remainderman under her father's will, the complaint alleged, Mary Ruth had acquired an undivided one-tenth interest in her father's property upon her mother's death and was entitled to share in those sums paid by Addington Enterprises for the right to mine the land. The circuit court entered summary judgment in favor of Mary Ruth, and this appeal ensued.

In 1975, Condor Webb executed a will whereby, pursuant to Item III thereof, he devised his real property in the event of his death. The first paragraph under Item III stated:

> All of my real property, of whatsoever kind and description, wheresoever situated, which I may own or have an interest in, or have the right to dispose of at the time of my decease, I do hereby give, bequeath and devise to my beloved wife, Sadie Webb, absolutely and in fee simple.

The second paragraph of Item III provided for the disposition of a particular tract of land in the event Sadie predeceased Condor:

> However, should my wife predecease me or should we die simultaneously, then it is my desire that I give, bequeath and devise to my daughter, Marcella Stanley, the following described tract or parcel of land lying and being in Pike County, Kentucky, on Brushy Creek of Johns Creek, and being more particularly bounded and described as follows. . . .

It is the third paragraph of Item III which is the focus of this appeal, and upon which Mary Ruth relied in support of her position that her mother acquired only a

life estate in the property at issue and that upon her mother's death, Mary Ruth acquired a one-tenth interest in the property:

> Further, upon my wife's death, I give, bequeath and devise all the rest and residue of my real property to my ten remaining children, Ethel Young, Gracie Morrison, Lucille Lowe, Mary Ruth Maynard, Billy Webb, John Webb, Clifton Webb, Doris Webb, Haskel Webb, and Ronnie Webb, absolutely and in fee simple, share and share alike.

Apparently, from the moment Condor died in 1990, there was some confusion concerning the terms of Condor's will under Item III. For example, it appears that even though Sadie did not predecease Condor, Marcella took title to the property described in the second paragraph of Item III. Further, Sadie's first attempt to convey Condor's property to appellants John and Bill occurred on August 18, 1993, when she conveyed only a one-eleventh interest in the property. Thus, it appears that although Sadie was still alive when Condor died, she erroneously believed she merely shared an interest in Condor's real estate with ten (10) of her children (absent Marcella) pursuant to the third paragraph of Item III, in spite of the fact that the will devised Condor's real property to those children only "upon [Sadie's] death."

It appears that immediately after the above-referenced conveyance, Mary Ruth raised the question whether her mother had the power to convey the five (5) tracts of land to Mary Ruth's brothers, John and Bill.[1] Five (5) months later, apparently taking the position that their father meant for Sadie to inherit all of his real property upon his death, the couple's children, save for the three (3) involved in this action, executed quitclaim deeds conveying to Sadie any interest they may have acquired in

---

1. Interestingly, there appears to have been no question raised regarding Marcella's acquisition of a portion of her father's property al-

though the condition by which she should have taken, Sadie's predeceasing Condor, had not been met.

their father's five (5) tracts under his will.[2]

On February 16, 1994, Sadie executed yet another deed, this time a warranty deed, conveying to John and Bill "all her right, title and interest in" the five (5) tracts of land. The deed further recited:

> This Deed does not convey any property willed to Marcella Stanley by Condor Webb recorded in Will Book T, Page 819, in the Pike County Clerk's Office and includes all interest conveyed from Gracie Morrison, Dorris Webb, Ronnie Webb, Mary Ruth Maynard, Lucille Lowe, Clifton Webb, Haskell Webb, Ethel Young and Marcella Stanley, and their spouses, by Quitclaim Deeds.[3]

Following these transactions, John and Bill Webb conveyed mining rights in the property to Addington Enterprises. It is Mary Ruth's position that she owns one-tenth of the property, acquired upon her mother's death, and deserves to share in the monies collected from Addington Enterprises pursuant to its right to mine the land.

In September 1996, Mary Ruth moved for summary judgment, arguing that pursuant to the language used under Item III of Condor's will, Condor intended that his children share in the five (5) tracts of land equally upon their mother's death, and that, as such, Sadie took only a life estate in Condor's real property. Appellants also moved the court for summary judgment, arguing that, according to case law, an estate given in fee cannot be defeated by a subsequent provision limiting it to a smaller estate unless the testator clearly intended to do so. They maintained that

from the very language of Condor's will devising his property in fee simple to Sadie, Condor did not intend that his wife have only a life estate in that property. Appellants also argued that pursuant to KRS 394.240(1), Mary Ruth had only two (2) years after Condor's will was admitted to probate (November 11, 1990) in which to file a complaint concerning disposition of Condor's property.[4] Appellants maintained that Mary Ruth had failed to do so in a timely manner, having filed this action over five (5) years later.

The circuit court found that Item III of Condor's will contained contradictory provisions:

> The first paragraph of Item III purports to leave Mr. Webb's property in fee simple to his wife, Sadie Webb, but thereafter the Will provides that upon his wife's death that the one particular tract would go to Marcella and that the remaining property would be divided among his other ten children, one of which is the Plaintiff, Mary Ruth Maynard.

The court further found that by securing quitclaim deeds from Sadie's other children conveying to her whatever interest they might have acquired in their father's property under his will, and by accepting without protest Marcella's title to a certain portion of her father's property, appellants in effect supported Mary Ruth's interpretation of Condor's will.

In determining that Sadie took only a life estate in her husband's property and that Mary Ruth inherited a one-tenth in-

---

2. At this point in time, these children had actually acquired no interest in the property, Sadie's not yet having died. Nonetheless, they executed the deeds, excepting from conveyance the property "willed" to daughter Marcella.

3. Although there is reference made to Mary Ruth's having conveyed to her mother any interest Mary Ruth may have acquired in the property, the record does not establish that any such deed was ever executed.

4. KRS 394.240(1):

> Any person aggrieved by the action of the District Court in admitting a will to record or rejecting it may bring an original action in the Circuit Court of the same county to contest the action of the District Court. Such action shall be brought within two (2) years after the decision of the District Court. The parties may, in the same action, or in a separate action if the validity of the will is not in issue, seek construction, interpretation or reformation of a will.

terest in that property upon Sadie's death, the court concluded, in pertinent part:

> Where a Will devises property to one person absolutely and in a subsequent clause all of the same property is disposed of to others after the death of the first taker, the first taker receives only a life estate, absent language in the will giving disposal power.
>
> ... *Hanks [v. McDanell,* 307 Ky. 243, 210 S.W.2d 784 (1948),] holds that a Will bequeathing property to a designated person in language which would otherwise be a fee with the further provision that any of the said property remaining at the death of the second taker should be divided equally among named persons, gives the first taker a life estate only.
>
> . . . .
>
> The court may consider the conduct of parties as being admissions as to a position on a matter pending in a judicial proceeding. The actions of the Defendants in securing quitclaim deeds which acknowledge the validity of the will clause granting Marcella Stanley property amounts to a recognition of the Plaintiff's position, but the Court places little reliance upon these acts, the will speaking for itself under the foregoing Conclusions of Law.

Addressing appellants' argument that Mary Ruth had filed her complaint beyond the statute of limitations period, the court concluded:

> [T]he court notes that no party hereto is "contesting" the Will of Condor Webb in the sense that anyone denies its execution, or the mental capacity of the Testator nor claims that the Testator signed the same other than lawfully. All this Court is being asked to do is[,] not to set aside the Will of Condor Webb[,]but to interpret the same.
>
> . . . .
>
> The two year Statute of Limitations interposed by KRS 394.240 relates only to actions in which persons feel themselves aggrieved by the action of the District Court in admitting a will to record or rejecting it[,] and has no relation to an action asking for an interpretation of the provisions of a valid will.

Appellants have appealed the court's decision.

■ We agree with the circuit court that KRS 394.240 does not apply under the circumstances to bar Mary Ruth's cause of action. The court correctly decided that this action is not one which contests the validity of Condor Webb's will. Rather, Mary Ruth's allegations are more akin to an action to recover real property or, at the very least, to recover profits or damages for the wrongful withholding of real property. At any rate, we do not believe the action is barred by any applicable statute of limitations.

■ As we review the circuit court's interpretation of Condor's will, we are mindful of the following:

> In an effort to achieve a proper result in this case, we go first to the most basic of all such rules, the so-called "polar star rule." This rule holds that in the absence of some illegality, the intention of the testator is controlling. To ascertain the testator's intention, it is necessary to first examine the language of the instrument. If the language used is a reasonably clear expression of intent, then the inquiry need go no further. If it is not such a clear expression, then it is necessary to construe the language used according to appropriate rules of construction.

*Clarke v. Kirk,* Ky., 795 S.W.2d 936, 938 (1990) (citations omitted).

The circuit court relied heavily on *Hanks v. McDanell,* 307 Ky. 243, 210 S.W.2d 784 (1948), in support of its determination that Sadie acquired only a life estate in Condor's real property. *Hanks* addressed a situation in which the testator, rather than expressly devising his estate to his wife, Sallie, in fee simple, devised his property to her "to be used, enjoyed and

disposed of by her in any way she may choose," which terms were followed by this condition: " '[S]hould any of said property belonging to my estate remain at the death of my said wife, the same shall be divided equally among Mollie Bledsoe, Louisa Hanks, John W. McDanell and Flora Wooley.' " *Id.* at 785.

The testator died in 1936, at which time his wife, Sallie, assumed control over his property. Meanwhile, Sallie executed a will devising the balance of her estate, upon her death, to her sister, Louisa Hanks, and others.

When Sallie died eleven (11) years later, she had not used or otherwise disposed of all the property she had acquired under her husband's will. Sallie's sister, Louisa, sought construction of that will, arguing that under the terms therein, Sallie had acquired her husband's property in fee simple. Thus, Louisa maintained, she was entitled to that portion of the property remaining in Sallie's estate by way of Sallie's will. The Court, however, found that under her husband's will, Sallie had taken only a life estate with the power of disposition and, given that Sallie had not disposed of all the property acquired thereunder, the remaindermen named in her husband's will were entitled to that property.

In the case now before us, while the circuit court found *Hanks* to be "dispositive" of the decision it reached, we do not. Condor expressly devised his property to Sadie in fee simple absolute. He used no words suggestive of any limitation whatsoever on Sadie's right to treat the property as her own, whereas in *Hanks,* the intent of the testator is less clear. Thus, we believe it would be helpful to review two (2) post-*Hanks* decisions involving wills which used language more similar to that in Condor's will.

In *Swango v. Swango's Adm'r,* 313 Ky. 495, 232 S.W.2d 347 (1950), the testator devised his property to his wife in the following manner:

"I bequeath all my land ... unto my wife, Jimmie Swango, *to and for her absolute use and benefit* according to nature and quality thereof respectively, *I want her to use the above to suit herself, to sell, trade or barter, or spend as she sees fit* ....

"After my wife's death I *desire* the real and personal property, money *if any,* · that may be left to be divided equally between my wife's and my heirs...."

*Id.* The testator's widow used a portion of her husband's estate after his death, and the portion she did not use, she devised by will. After her death, the question arose whether the widow had acquired her husband's estate in fee simple, in which case the beneficiaries under her will would inherit the unused portion of the testator's estate, or whether the widow had acquired merely a life estate with the power to dispose, in which case the heirs referenced in the testator's will would inherit the remainder of his property upon his wife's death. The trial court determined that the widow had acquired her husband's estate in fee simple. The appellate court affirmed, reasoning:

It will be noted the testator first gave his property absolutely to his widow. In the second paragraph he expressed a "desire" that if any of the estate remained at her death it should be divided equally between the heirs of each. Thus we have a precatory expression which it is claimed was a limitation on the estate devised and bequeathed to the widow.

While this Court has repudiated the rule that where an absolute estate is devised, subsequent provisions will not be held to impair that estate, we still must seek out the true intention of the testator.

... Unless the context forces the conclusion that the precatory words were used in a stronger sense, they will not be construed as a limitation on the primary estate devised.

... [T]he second paragraph of the will quoted did not impair the estate created in the first paragraph. The testator gave all his property to his wife for her absolute use and benefit, and further emphasized her complete discretionary powers by stating that she was to use it "to suit herself." In the second paragraph of the will he apparently anticipated that all of the estate might not be consumed or disposed of by his wife, and in that event what remained he wished divided equitably.

Reading the entire will, it is clear to us that the testator intended no legal or enforceable limitation on the estate left to his wife, except possibly in the event she died without having disposed of a portion of it. Since she had, by use and by will, appropriated it all, there was no remaining estate in which appellants could share.

*Id.* at 348.

In *Flynn v. Flynn*, Ky., 469 S.W.2d 886 (1971), the Court reviewed the following will:

"I, hereby devise and bequeath all of my property both real and personal ... to my beloved wife, Eugenia Flynn, for and during her natural life, in fee simple absolute with the expressed desire that if she does not need to sell same, that she dispose of same to be effective at her death in an equitable manner to our son John, and my son Lewis."

*Id.* at 887. Following the testator's death, devisees, John and Lewis, brought a declaratory action, maintaining that Eugenia had acquired only a life estate in her husband's property. The Court disagreed, finding that Eugenia had acquired the property in fee simple:

In order to determine the intention of the testator, it is necessary to look at the will as a whole.

Item Two describes the estate devised to appellee as a "fee simple absolute." The appellants would have us find that the other words used in Item Two restrict the estate to a life interest.

Among the other words are ones giving the appellee the power to sell the property. This is not consistent with a life estate. Also, there is the statement of the testator's desire that appellee leave the remainder, if any, of his estate at her death to the testator's two sons. The word "desire" is a precatory term. It lacks the force necessary to limit a prior estate. The only words used in Item Two that could be regarded as limiting the fee simple estate are "for and during her natural life." Those words alone, in view of the other provisions of the will, cannot be taken as establishing an intent that appellee should have only a life estate.

*Id.* (Citations omitted).

We believe the above-quoted cases provide greater assistance than *Hanks* in analyzing Condor's will in its totality. Most significant is Condor's express devise of all of his real property to Sadie, "absolutely and in fee simple," placing no limitations at all on Sadie's power to dispose of the property. Apparently needing the income therefrom, she sold the property to her sons for $35,000.00. Second, under Item II of his will, Condor likewise devised all of his personal property to Sadie, "absolutely," stating that his children were to receive it only in the event that Sadie predeceased him. Third, by way of quitclaim deeds conveying to Sadie any interest they may have acquired in their father's property under his will, Condor's children evidently believed he intended that Sadie acquire all of his property, in fee simple and for her own use and benefit.

Fourth, pursuant to the analysis in *Swango*, even if Condor intended that his children receive the "rest and residue" of his real property in the event Sadie did not dispose of it in its entirety, the fact remains that she did dispose of it, and there is simply nothing left for Mary Ruth to take. Finally, we are cognizant of the following law:

A controlling principle is thus stated in *Clay v. Chorn's Ex'r*, 152 Ky. 271, 153 S.W. 425, 426:

> "An estate once given in fee will not be defeated by a subsequent provision in the same instrument limiting it to a smaller estate, unless the language of the instrument or the intention of the testator requires it, and when, upon the consideration of the whole instrument, the mind is in doubt as to what estate was intended to pass, that construction will be adopted which passes the fee." [Citations omitted].

Another principle of significance here is that the law favors the vesting of a fee.

*Chaffin v. Adams*, Ky., 412 S.W.2d 563, 564 (1967) (citation omitted).

We are mindful of the standard by which we may reverse the circuit court:

> The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. There is no requirement that the appellate court defer to the trial court since factual findings are not at issue. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." Summary "judgment is only proper where the movant shows that the adverse party could not prevail under any circumstances."

*Scifres v. Kraft*, Ky.App., 916 S.W.2d 779, 781 (1996) (citations omitted).

In light of the above-cited case law rendered subsequent to *Hanks*, we do not believe that Mary Ruth was entitled to judgment as a matter of law. Rather, we believe the case law supports appellants' position, as they argued it in both their motion for summary judgment and in this appeal, that Condor devised his real property to his wife, Sadie, in fee simple absolute. As such, we reverse the judgment of the Pike Circuit Court, and remand with instructions to enter summary judgment in favor of appellants.

ALL CONCUR.